CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
JUSTIN P. RAPHAEL (State Bar No. 292380)
Justin.Raphael@mto.com
CHRISTOPHER CRUZ (State Bar No. 346128)
Christopher.Cruz@mto.com
JAVIER KORDI (State Bar No. 348358)
Javier.Kordi@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for *Defendant National Collegiate Athletic Association*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR SMART AND MICHAEL HACKER, individually and on behalf of all those similarly situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>     Defendants. | Case No. 2:22-cv-02125<br><br>**DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Judge:    Hon. William B. Shubb<br>Courtroom: 5<br>Date:     May 15, 2023<br>Time:     1:30 p.m. |

**NOTICE OF MOTION AND MOTION TO TRANSFER VENUE**

PLEASE TAKE NOTICE that, on May 15, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of this Court, located at 501 I Street, Sacramento, California, Defendant National Collegiate Athletic Association ("NCAA") will and hereby does move this Court for an order transferring this case to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.

This Motion is based upon the Memorandum of Points and Authorities, the attached declaration of Kevin Lennon, all other materials supporting this Motion, all pleadings on file, and any other matter submitted before or at the hearing.

DATED: February 24, 2023     MUNGER, TOLLES & OLSON LLP

By: _____/s/Carolyn Hoecker Luedtke_____
    CAROLYN HOECKER LUEDTKE
    Attorneys for Defendant National
    Collegiate Athletic Association

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO TRANSFER VENUE ................................................. 1

I.    INTRODUCTION ............................................................................................................. 1

II.   BACKGROUND ............................................................................................................... 2

    A.    The NCAA and the Bylaws at Issue ..................................................... 2

    B.    The Named Plaintiffs ............................................................................ 3

    C.    Procedural Posture ................................................................................ 4

III.  ARGUMENT .................................................................................................................... 4

    A.    This Case Could Have Been Brought In The Southern District of Indiana ................................................................................ 5

    B.    Convenience and Fairness Factors Strongly Support Transfer ................................................................................................. 6

        1.    The named Plaintiffs' choice of forum carries minimal weight. ................................................................................ 6

        2.    Indiana will be a more convenient location for witnesses. ...................................................................................... 8

        3.    Ease of access to evidence favors transfer. ............... 10

        4.    Familiarity with applicable law is a neutral consideration. .............................................................................. 11

        5.    Local interest in the controversy favors transfer. ........................................................................................ 12

        6.    Relative court congestion and time to trial is a neutral factor. .................................................................... 14

IV.   CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Aftab v. Gonzalez*,
   597 F. Supp. 2d 76 (D.D.C. 2009) ..............................15

*Agnew v. NCAA*,
   2011 WL 13152860 (N.D. Cal. Feb. 22, 2011) ............8, passim

*Aldrich v. NCAA*,
   484 F. Supp. 3d 779 .........................................12

*Barnstormers, Inc. v. Wing Walkers, LLC*,
   2010 WL 2754249 (S.D. Cal. July 9, 2010) ....................11

*D.J. Markham v. Variable Annuity Life Ins. Co.*,
   2022 WL 891290 (E.D. Cal. Mar. 25, 2022) ................5, 6, 8

*Doe 1 v. NCAA*,
   2023 WL 105096 (N.D. Cal. Jan. 4, 2023) .....................12

*Italian Colors Rest. v. Am. Express Co.*,
   2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ...................8

*Johns v. Panera Bread Co*,
   2008 WL 2811827 (N.D. Cal. July 21, 2008) ..................6, 7

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir.2000) ..................................4

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) .................................6

*O'Bannon v. NCAA*,
   2009 WL 4899217 (N.D. Cal. Dec. 11, 2009) ...................11

*Saleh v. Titan Corp.*,
   361 F. Supp. 2d 1152 (S.D. Cal. 2005) .......................10

*Skyriver Tech. Sols v. OCLC Online Comput. Libr. Ctr. Inc.*,
   2010 WL 4366127 (N.D. Cal. Oct. 28, 2010) ....................9

*Stewart Org. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ...........................................5

*Szegedy v. Keystone Food Prods., Inc.*,
   2009 WL 2767683 (C.D. Cal. Aug. 26, 2009) ....................12

*Ward v. Fluor Enters., Inc.*,
   2011 WL 778720 (N.D. Cal. Mar. 1, 2011) .......................6

*Wolfram Alpha LLC v. Cuccinelli*,
   490 F. Supp. 3d 324 (D.D.C. 2020) ............................15

**STATE CASES**

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
   33 Cal. App. 5th 70 (Cal. App. 2019) .........................13

**FEDERAL STATUTES**

28 U.S.C. § 1404(a).....................................1, passim

**STATE STATUTES**

Cal. Bus. & Prof. Code § 16600..................................11

**RULES - OTHER**

Fed. R. Evid. 201(b).............................................9

**OTHER AUTHORITIES**

*Hearing on The Need for New Lower Court Judgeships, 30
   Years in the Making*, 117th Cong. 2-3 (2021) .................14

https://docs.house.gov/meetings/JU/JU03/20210224/111237/
   HHRG-117-JU03-Wstate-MuellerK-20210224-U1.pdf (last
   visited Feb. 23, 2023) .......................................14

*U.S. District Courts Federal Court Management
   Statistics*, Reporting Period Ending June 30, 2022,
   https://www.uscourts.gov/file/45245/download (last
   visited Feb. 23, 2023) ..................................14, 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This case involves a legal challenge to bylaws adopted by colleges and universities across the country who are members of the NCAA, an unincorporated association of nearly 1,100 member institutions nationwide, which is based in Indianapolis, Indiana. Plaintiffs allege that NCAA bylaws improperly restricted Division I baseball teams to three paid coaches and allowed a fourth volunteer coach in violation of federal antitrust laws. They also allege state law restitution and unfair competition claims. The two named Plaintiffs purport to represent a nationwide class of volunteer baseball coaches who coached at Division I institutions across the country. Defendant NCAA requests that, for the convenience of the parties and the witnesses, and in the interest of justice, the Court transfer this antitrust case to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

Transfer is warranted here because the case has strong connections to Indiana and no greater connection to this District than other districts where putative class members and the institutions where they coached are located. One named Plaintiff was a volunteer coach at the University of Arkansas from 2018–2020 and now lives in Arizona; he does not identify any connection to California. The other named Plaintiff was a volunteer coach at the University of California, Davis from 2019–2021. The rest of the putative class is spread across the country. The challenged bylaws were adopted by NCAA member institutions nationwide through a process facilitated by NCAA staff members based in Indianapolis, Indiana. There is no allegation that any of that legislative

process of adopting or enforcing the bylaw took place in California. Because Indiana has the strongest connection of any District to this litigation, transfer under Section 1404(a) makes sense here and the NCAA respectfully requests that this Court exercise its discretion and transfer the litigation.

## II. BACKGROUND

### A. The NCAA and the Bylaws at Issue

The NCAA is based in Indianapolis, Indiana. Complaint ¶ 8; Declaration of Kevin Lennon In Support of Motion to Transfer ("Decl.") ¶ 3. It is a voluntary unincorporated association created by nearly 1,100 member colleges and universities across the country to administer intercollegiate athletics. *Id.* ¶¶ 3, 5. "The NCAA [through] its members ha[s] long adopted and enforced rules that regulate college sports." Complaint ¶ 33. For example, the NCAA member institutions set rules governing the recruitment of athletes, playing and practice seasons, and the number of allowed coaches, and they delegated to the NCAA the power to enforce those rules. Decl. ¶ 7.

NCAA legislation is adopted by its member institutions, who consider the legislation either from their respective campuses, at NCAA Conventions at venues across the country, or at meetings and conferences at NCAA headquarters in Indiana. Legislation includes bylaws such as those challenged in this litigation, which are contained in the Division I Manual. *Id*. ¶ 7. The NCAA national office staff communicates with member institutions about legislation proposed by the membership, works with the membership and governance committees to draft the proposed legislation, disseminates the draft legislation among member institutions, and

schedules meetings for the membership to vote on specific legislation. *Id*. ¶ 8.  In addition, "the NCAA employs a staff to ensure compliance with and to enforce bylaws and other legislation…." Complaint ¶ 47.  National office staff work from the NCAA's headquarters in Indianapolis, Indiana. Decl. ¶¶ 6, 8.

Plaintiffs allege that "[c]urrently, around 300 NCAA Division I member schools have baseball teams." Complaint ¶ 34.  Division I Bylaw 11.7.6 limits each Division I member institution to three paid baseball coaches.  Complaint ¶¶ 42, 44.  Division I Bylaw 11.01.6 permits each Division I member institution to hire a volunteer coach in certain sports including baseball, but contains rules ensuring that member institutions cannot pay volunteer baseball coaches salaries that would make them a fourth paid coach in violation of the three-coach limit.  *Id.* ¶¶ 43-44.

In January 2023, the membership of the NCAA voted to strike the bylaws limiting baseball coaches to three and providing for a volunteer coach.  Decl. ¶ 9.  This was the result of work by various NCAA committees comprised of representatives of member institutions across the country and supported by national office staff from the NCAA's headquarters in Indianapolis.  *Id*. ¶ 9.

**B.    The Named Plaintiffs**

The two named Plaintiffs are allegedly two former college volunteer baseball coaches: (1) Taylor Smart who coached at the University of Arkansas from 2018–2020 and now resides in Arizona, and (2) Michael Hacker who coached at the University of California, Davis from 2019–2021 and resides in California (the Complaint does not say whether he resides in this District). Complaint ¶¶ 6-7.  The Complaint alleges that for a couple years,

-3-
DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

they were volunteer baseball coaches for Division I schools. These two former volunteer coaches purport to represent a nationwide class of volunteer baseball coaches estimated to include "over 100 members residing in various parts of the United States." *Id.* ¶ 18. The Complaint is silent as to the named Plaintiffs' current professions and whether they were also baseball coaches with other programs in other states. The Complaint is also silent as to what efforts these two men made, if any, to find coaching jobs other than their alleged volunteer coaching jobs for a couple years with UC Davis and University of Arkansas.

### C. Procedural Posture

The NCAA respectfully requests this Court transfer the case to the Southern District of Indiana. If the Court elects to retain the case in the Eastern District of California, the NCAA has filed a motion to dismiss the Complaint.[1]

### III. ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under § 1404(a), a district court "has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th

---

[1] Defense counsel asked Plaintiffs' counsel to agree to have the motion to transfer briefed and decided before briefing on the motion to dismiss, but Plaintiffs' counsel declined so both are submitted to this Court simultaneously.

Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (internal quotation marks omitted). Ultimately the moving party, here the NCAA, "bears the burden of showing that transfer is appropriate." *D.J. Markham v. Variable Annuity Life Ins. Co.*, 2022 WL 891290, at *2 (E.D. Cal. Mar. 25, 2022).

"In determining whether to transfer a case under § 1404(a), district courts employ a two-step analysis." *Id.* at *2 (granting motion to transfer nationwide class action to forum where defendant corporation is based). First, the moving party must show that the transferee forum is a forum in which the action could have been brought. *Id.* Then, as a second step, "the Court must consider a number of public and private factors to determine whether, on balance, the transfer is warranted, such as: (1) plaintiff's choice of forum; (2) convenience of the witnesses; (3) convenience of the parties; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum." *Id.* Looking at these factors that go to convenience and the interest of justice, they either favor transfer to Indiana or are neutral or inapplicable. On balance, the factors support transfer.

**A. This Case Could Have Been Brought In The Southern District of Indiana**

First, as a threshold matter, there is no question that this action could have been brought in the Southern District of Indiana. As the Complaint pleads, subject matter jurisdiction is based on a federal question under the federal antitrust laws.

Complaint ¶ 11. And the NCAA is headquartered in Indianapolis within the Southern District of Indiana. Complaint ¶ 8. This case may, therefore, be transferred to the Southern District of Indiana pursuant to 28 U.S.C. §1404(a).

### B. Convenience and Fairness Factors Strongly Support Transfer

Next, this Court should look to the various factors to determine whether, on balance, transfer is appropriate here. Those factors counsel in favor of transfer to Indiana.

#### 1. The named Plaintiffs' choice of forum carries minimal weight.

Because this case involves a putative nationwide class action of Division I volunteer baseball coaches residing across the country who coached baseball at colleges and universities located across the country, the Plaintiffs' choice of forum is entitled to little deference. *See, e.g., Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("When an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."); *Ward v. Fluor Enters., Inc.*, 2011 WL 778720, at *3–4 (N.D. Cal. Mar. 1, 2011) (in alleged nationwide class action, plaintiffs' "choice of forum receives only to minimal deference."); *D.J. Markham*, 2022 WL 891290, at *3–4 (finding this factor "is given little deference" given plaintiff seeks to represent a class and observing "[t]hough Plaintiffs reside in this district, it is unclear where any other class members reside, though presumably class members reside throughout the country").

In granting a motion to transfer in *Johns v. Panera Bread Co*, 2008 WL 2811827 (N.D. Cal. July 21, 2008), the Northern District of California similarly gave the choice of forum factor little

-6-
DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

weight where there was a putative nationwide class action of store managers brought in California by a California-based store manager against Panera, which was headquartered in Richmond Heights, Missouri. In that case, there were 509 bakeries nationwide, and only 32 of these were located in California, and there were 1,400 store managers nationwide, and only 40 managers in California, so the Court granted the request to transfer the case from Plaintiff's home in California to Missouri where Defendant was headquartered. *Id.* at *2-3 (finding California plaintiff's decision to bring claim as a nationwide class action "substantially undercuts" otherwise presumed deference to plaintiff's choice of forum and finding that in light of the small number of California based stores and managers, "Plaintiff's choice of forum in the present case is entitled to little deference"). The present case is similar. There is an alleged nationwide class of Division I volunteer baseball coaches, and there are only five Division I baseball programs in this District out of what Plaintiffs allege is more than three hundred Division I baseball programs. Complaint ¶ 34; Decl. ¶ 10 (identifying Cal State Bakersfield, Fresno State, Sacramento State, UC Davis, and University of the Pacific, Stockton as Division I baseball programs in this District). Given the tiny fraction of the potential class that resides in this District, the Plaintiffs' choice of this District as their forum is entitled to little or no deference.

### 2. Indiana will be a more convenient location for witnesses.

"The convenience of witnesses is one of the most important factors in determining whether a transfer under § 1404 is appropriate." *Markham*, 2022 WL 891290, at *4 (finding that where most of defendant's witnesses would be in their home venue, this factor weighed in favor of transfer). The party witnesses in this case will be (1) NCAA employees, who are based in Indianapolis, and (2) class members, who could hail from any or all fifty states under the proposed class definition. If third party colleges or universities who employed the volunteer coaches and/or non-volunteer coaches are witnesses in this case, they also could be from any or all fifty states. The convenience factors "weigh heavily in favor of transfer" where "most of the witnesses" were expected to be "the defendants' employees who worked in the home venue of defendant." *Italian Colors Rest. v. Am. Express Co.*, 2003 WL 22682482, at *1 (N.D. Cal. Nov. 10, 2003) (granting a motion to transfer a nationwide class action with a California-resident Plaintiff to the defendant's home state where the contracts at issue were drafted in the defendant's home state).

The NCAA's employees work in Indianapolis. Decl. ¶¶ 3, 6. This makes the Southern District of Indiana a much more convenient forum for them. *See, e.g.*, *Agnew v. NCAA*, 2011 WL 13152860, at *2 (N.D. Cal. Feb. 22, 2011) (granting transfer of nationwide class action and recognizing that "the Southern District of Indiana likely would be more convenient for defense witnesses employed by NCAA"). In light of plaintiff's allegations of anticompetitive conduct by the NCAA, the convenience of the NCAA's employee

witnesses should be given more weight than the convenience of plaintiffs or the putative class members. *See Skyriver Tech. Sols v. OCLC Online Comput. Libr. Ctr. Inc.*, 2010 WL 4366127, at *3 (N.D. Cal. Oct. 28, 2010) (granting motion to transfer after finding convenience of defendant's employee witnesses more important than convenience for plaintiff's witnesses in litigation over anticompetitive business practices where merit of allegations hinge on activity by defendant where it operates its business).

Plaintiffs' alleged class consists of more than one hundred current and former volunteer baseball coaches from across the country who coached at any NCAA Division I member institution. Complaint ¶¶ 17-18.  Only five Division I baseball programs are located in this District out of more than three hundred. Complaint ¶ 34; Decl. ¶ 10.  The vast majority of NCAA member institutions are found in the Midwest, South or East region of the United States and are closer to Indiana than to California. See Decl. ¶ 10, Ex. A (list of Division I member institutions).[2] Putative class members presumably reside all across the country. In the unlikely event that a class is certified in this case, any members of that class who provide testimony, or otherwise play an active role in this case, are likely to find the centrally-located Southern District of Indiana a more convenient forum than this District.

---

[2] The Court can take judicial notice of the location of NCAA member institutions on this motion, because the fact of the location of these schools is (a) not subject to reasonable dispute, (b) generally known within the territorial jurisdiction of this Court and/or (c) capable of accurate determination by sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

-9-
DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

Similarly, if any third party colleges or universities or any paid baseball coaches were to be witnesses in this case, the Southern District of Indiana would likely be more convenient given its central location in the nation, as discussed above. "Importantly, while the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Agnew*, 2011 WL 13152860, at * 3 (*quoting Saleh v. Titan Corp*., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005)). The *Agnew* court in granting transfer noted that the plaintiff there conceded (as he must) that "the members of NCAA's boards, councils and committees are 'located all over the country,' and 'their locations do not favor either forum.'" *Id.* The court further explained "that NCAA committees meet throughout the country and the location of non-party witnesses who are members of those committees would not favor one forum over another." *Id.* *Agnew* found that "convenience to non-party witnesses is a neutral factor." *Id.*

Thus, transfer to Indiana would be much more convenient for NCAA party witnesses and at least as convenient for nationally-dispersed Plaintiff class and third-party witnesses.

**3. Ease of access to evidence favors transfer.**

The NCAA's business records are stored primarily at its headquarters in Indianapolis. Decl. ¶ 11. This is not a document intensive case, but as discussed above, access to the evidence is facilitated by transferring the case because relevant documents and potential witnesses from the NCAA are much more likely to be located in or near the Southern District of Indiana (or in one of the fifty states from which the putative nationwide class resides)

than in or near this District.  As the Northern District of California recognized in transferring the *Agnew* antitrust litigation against the NCAA to Indiana, "[a]lthough 'modern technology has significantly reduced the costs associated with the transfer of documents' in the case of electronic records, *O'Bannon v. NCAA*, 2009 WL 4899217, at *2 (N.D. Cal. Dec. 11, 2009), litigation expenses will be minimized by adjudicating the action in the district where most of the documentary evidence is located." *Agnew*, 2011 WL 13152860, at *3.  Here, that warrants transfer to Indiana.

        **4.    Familiarity with applicable law is a neutral consideration.**

The familiarity with applicable law factor is neutral.  This case is principally an antitrust case under federal law, and both this District and the Southern District of Indiana are equally well-suited to address these issues.  *See Agnew*, 2011 WL 13152860, at *3 (noting that the Northern District of California and the Southern District of Indiana were equally able to address plaintiff's Sherman Act claim).  That Plaintiffs pled an unfair competition claim under California Business and Professions Code § 16600 or restitution-based claims does not change the transfer analysis as federal judges in any state are capable of accurately and correctly applying California's law. *See Barnstormers, Inc. v. Wing Walkers, LLC*, 2010 WL 2754249, at *3 (S.D. Cal. July 9, 2010) (granting transfer to federal court in Texas and finding familiarity-with-the-law factor was in "equipoise" despite California unfair competition and state law claims in the case because although "a federal court sitting in Texas may not be as

DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

familiar as this Court with California law, federal courts are adept at applying various state law claims of unfair competition and deceptive trade practices"); *Szegedy v. Keystone Food Prods., Inc.*, 2009 WL 2767683, at *7 (C.D. Cal. Aug. 26, 2009) (granting transfer and finding judges in federal court in Pennsylvania are "fully capable" of deciding issues of California law).

    **5. Local interest in the controversy favors transfer.**

There is stronger local interest in this litigation in Indiana because the NCAA is based in Indiana and is accused of adopting an unlawful bylaw through its membership, which was facilitated and enforced from Indiana.[3] In *Agnew*, the Northern District of California granted a motion to transfer a putative class action against the NCAA to Indiana. In so doing, it found the "NCAA is headquartered in Indianapolis and most of its employees live and work there. Thus Indiana has a strong interest in this litigation." *Agnew*, 2011 WL 13152860, at *3. In explaining its reasoning, the court held that since the member institutions at which plaintiff athletes participated in sports "are dispersed throughout the United States," and because the NCAA

---

[3] As the Northern District of California has repeatedly recognized, the NCAA facilitates the implementation of nationwide "legislat[ion] in Indiana, where it is headquartered," meaning that any alleged "harm caused by the NCAA's [supposed] failure to enact particular legislation arises out of Indiana," not California. *Aldrich v. NCAA*, 484 F. Supp. 3d 779, 795; *Doe 1 v. NCAA*, 2023 WL 105096, at *8–11 (N.D. Cal. Jan. 4, 2023) (granting a motion for lack of personal jurisdiction over the NCAA in the California and, among other things, noting that the case was based on allegations of wrongful rulemaking those alleged activities happened in Indiana "where the NCAA has its principal place of business and transacts its work, not here, where the NCAA has no offices").

-12-
DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

was based in Indianapolis, the fact some member institutions are in California gives California "no greater interest in this litigation than other states."  *Id.* at *3.  The same is true here.  The fact that one coach – Plaintiff Michael Hacker– allegedly coached for two years at UC Davis does not give California any greater interest in this litigation than any other state because Plaintiffs seek to represent a nationwide class of more than 100 coaches who reside and coached in states across the country.  Complaint ¶ 18.  There is no allegation that Plaintiff Hacker continues to coach in California or that he sought and was denied other baseball coaching employment in California.

In contrast, the NCAA does not have significant contacts with this District.  The NCAA does not maintain any offices anywhere in California.  Decl. ¶ 4.  The Complaint does not allege any actions taken by the NCAA in California.  To the extent there are allegations about a failure to pay named Plaintiffs, that payment would be by the University of Arkansas and UC Davis, not the NCAA.  Of course, there are member institutions in California, but the independent acts of the NCAA's member institutions are not attributable to the NCAA.  California law has expressly recognized that unincorporated associations are legal entities separate and apart from their members. *See Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 77 (Cal. App. 2019) (finding local chapter of fraternity is a separate legal entity from respondent, the overarching national fraternal organization with over 200 chapters).

In addition, one of the two named Plaintiffs has no contacts with this District according to the Complaint.  Plaintiff Smart

-13-
DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

was a coach in Arkansas and now resides in Arizona.  Complaint ¶ 6.

Overall, this factor favors transfer to the Southern District of Indiana, which has stronger contacts with this litigation and a stronger interest in this litigation.

### 6. Relative court congestion and time to trial is a neutral factor.

This District is one of the busiest in the nation.  Chief Judge Kimberly J. Mueller testified before the House Judiciary Committee on February 4, 2021 that this district has "qualified for judicial emergency status" for at least 20 years.  *Hearing on The Need for New Lower Court Judgeships, 30 Years in the Making*, 117th Cong. 2-3 (2021) (statement of Chief Judge Mueller, E.D. Cal.), https://docs.house.gov/meetings/JU/JU03/20210224/111237/HHRG-117-JU03-Wstate-MuellerK-20210224-U1.pdf (last visited Feb. 23, 2023).  The Southern District of Indiana is also a busy District.  In fact, the Eastern District of California and the Southern District of Indiana were both in the top ten districts nationally with the highest number of pending cases per judge for the year ending June 30, 2022.  And for that same time period, in looking at the number of months a civil case takes on average to get from filing to disposition, it is 10.4 months for the Eastern District of California and 10.1 months for the Southern District of Indiana.[4]  And, comparing weighted filings (which take into account the complexity of cases) for both

---

[4] *See U.S. District Courts Federal Court Management Statistics*, Reporting Period Ending June 30, 2022, https://www.uscourts.gov/file/45245/download (last visited Feb. 23, 2023).

-14-
DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

Districts for the same time period, the two Districts are comparably burdened with this District having a rating of 674 and the Southern District of Indiana weighted at 689.[5]  Where both Districts face comparable burdens on their dockets as is the case here, this factor is neutral.  *See Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 83 (D.D.C. 2009) (granting motion to transfer and finding that the court congestion factor slightly favors transfer where the transferee court "has a lower median time from filing to disposition, but has a larger total case load"); *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 336 (D.D.C. 2020) ("when statistics regarding relative congestion are mixed, this factor should be deemed as neutral").

**IV. CONCLUSION**

Looking at the factors, no factor favors retaining the case in this District, and the convenience of witnesses, the location of evidence, and the Southern District of Indiana's stronger connection to this litigation all weigh in favor of transfer.  The NCAA respectfully requests that this Court transfer this action to the Southern District of Indiana.

DATED:  February 24, 2023       MUNGER, TOLLES & OLSON LLP

By:  */s/Carolyn Hoecker Luedtke*
CAROLYN HOECKER LUEDTKE
Attorneys for Defendant National Collegiate Athletic Association

---

[5] *See id.*

-15-
DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)