Garrett R. Broshuis, Esq.
Steven M. Berezney, Esq.
Korein Tillery LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
gbroshuis@koreintillery.com
sberezney@koreintillery.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| TAYLOR SMART and MICHAEL HACKER, Individually and on Behalf of All Those Similarly Situated, | Case No.: 2:22-cv-02125-WBS-CSK |
| Plaintiffs, | |
| vs. | CLASS ACTION |
| | **DECLARATION OF SCOTT M. FENWICK OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH PRELIMINARY APPROVAL OF SETTLEMENT** |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association, | |
| Defendant. | The Hon. William B. Shubb |

I, Scott M. Fenwick, hereby declare:

1.      I am a Senior Director of Kroll Settlement Administration LLC ("Kroll"),[1] the proposed Settlement Administrator to be appointed in the above-captioned case, whose principal office is located at One World Trade Center, 285 Fulton Street, 31st Floor, New York, New York 10007. I am over 21 years of age and am authorized to make this declaration on behalf of Kroll and myself. The following statements are based on my personal knowledge and information provided by other experienced Kroll employees working under my general supervision. This declaration is being filed in connection with Preliminary Approval of the Settlement.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement entered into in this Litigation.

- 1 -

2.      Kroll has extensive experience in class action matters, having provided services in class action settlements involving antitrust, securities, labor and employment, consumer and government enforcement matters. Kroll has provided class action services in over 3,000 settlements varying in size and complexity over the past 50 years. Like all Kroll projects, this engagement will be staffed with a cohesive multi-person team overseen by experienced personnel who have worked on many prior settlement administrations.

3.      Kroll proposes to provide a full complement of notification and administration services for the Settlement Agreement entered into in this Litigation, including dissemination of notice by email, mail, and through the use of a Settlement website to be created for the matter.

4.      It is Kroll's understanding that it will be provided with a list of Class Members pursuant to the Settlement Agreement, which will contain a combination of names, physical mailing addresses, telephone numbers, email addresses, and other data elements pertinent to the administration of the Settlement.

### CAFA Notice

5.      On behalf of the Defendant, Kroll will provide notice of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) (the "CAFA Notice"). At Defendant's Counsel's direction, Kroll will send the CAFA Notice, which identifies how to access required documents relating to the Settlement, via first-class certified mail to (a) the Attorney General of the United States; and (b) the applicable state and territorial Attorneys General. The CAFA Notice will direct the recipients to the website www.CAFANotice.com, a site that will contain all the documents relating to the Settlement referenced in the CAFA Notice.

### Notice by Email

6.      In preparation for disseminating Notices by email (the "Email Notice"), Kroll will work with Class Counsel and Defendant's Counsel (collectively, "Counsel") to finalize the language for the Email Notice. A draft template of the Email Notice is attached hereto as **Exhibit A**. Once approved, Kroll will use the Email Notice template for the email campaign. Kroll will prepare a file with all Class Member email addresses and upload the file to an email campaign platform. Kroll will prepare email proofs for Counsel's review and final approval. The proofs/test emails for approval will

include the body of the email and subject line. Once the proof/test emails are approved, the email campaign will begin as directed in the Settlement Agreement.

7.      Kroll will track and monitor emails that are rejected or "bounced back" as undeliverable. At the conclusion of the email campaign, Kroll will provide a report with the email delivery status of each record. The report will include the number of records that had a successful Email Notice delivery, and a count of the records where delivery failed. Kroll will also update its administration database with the appropriate status of the email campaign for each of the Class Member records.

**<u>Notice by Mail</u>**

8.      Kroll will work with Counsel to format the Postcard Notice for mailing. A draft template of the Postcard Notice is attached hereto as **Exhibit B**. Upon approval, Kroll will coordinate the preparation of Postcard Notice proofs for Counsel's review and final approval.

9.      As required under paragraph 7.2 of the Settlement Agreement, Kroll will send the Postcard Notice by first-class mail to the physical mailing addresses of Class Members who have a physical mailing address included in the Class Member data.

10.      In preparation for the Postcard Notice mailing, Kroll will send the Class Member data through the United States Postal Service's ("USPS") National Change of Address ("NCOA") database.  The NCOA process will provide updated addresses for Class Members who have submitted a change of address with the USPS in the last 48 months, and the process will also standardize the addresses for mailing. Kroll will then prepare a mail file of Class Members that are to receive the Postcard Notice via first-class mail.

11.      As directed by Counsel, Postcard Notices returned by the USPS with a forwarding address will be automatically re-mailed to the updated address provided by the USPS.

12.      As directed by Counsel, Postcard Notices returned by the USPS undeliverable as addressed without a forwarding address will be sent through an advanced address search process in an effort to find a more current address for the record.  If an updated address is obtained through the advanced address search process, Kroll will re-mail the Postcard Notice to the updated address.

13.    The Notice Plan as outlined in the Settlement Agreement and as expected to be implemented by Kroll contemplates a robust list of Class Members to be provided by Class Counsel that will allow for direct Notice to reach the vast majority of Class Members through direct mail and email, consistent with due process. Based upon information provided by Counsel, and assuming data received is relatively current, Kroll estimates an average undeliverable rate of no more than 8% and thus projects direct notice will likely reach 92% of the proposed Class Members. These assumptions are subject to the accuracy and quality of the data received. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted Class Members is considered a high percentage and the "norm" of a notice campaign.[2]

**Settlement Website**

14.    Kroll will work with Counsel to create a dedicated Settlement website (the "Settlement Website"). The Settlement Website URL will be determined and approved by Counsel. The Settlement Website will contain a summary of the Settlement, will allow Class Members to contact the Settlement Administrator with any questions, and will provide notice of important dates such as the Final Fairness Hearing, last day to submit an Objection, and the last day to submit a Request for Exclusion. In order to satisfy IRS tax reporting obligations for payments over $600, the Settlement Website will instruct Class Members on how to submit their Tax Identification Number in order to avoid being subject to automatic backup withholding of approximately 24% of their Settlement Payment for state and federal taxes. The website will also provide Class Members the opportunity to select either electronic payment via ACH or payment by check, along with a means of updating the address to be used for Settlement Payments. The Settlement Website will include relevant case documents including the Long Form Notice, a copy of which is attached hereto as **Exhibit C**, as well as the operative complaint, the Settlement Agreement, the Order Granting Preliminary Approval, and any other materials agreed upon by Counsel for the Parties and/or required by the Court.

---

[2] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation:  A Pocket Guide for Judges, at 27 (3d ed. 2010).

DECLARATION OF SCOTT M. FENWICK IN CONNECTION WITH PRELIMINARY APPROVAL

**Toll-Free Telephone Number**

15.    Kroll will also establish a toll-free telephone number for the Settlement. This number will allow Class Members to call and obtain information about the Settlement through an Interactive Voice Response system and the option to be connected to a live operator. Class Members may also request copies of the Notice, as well as the Settlement Agreement.

**Post Office Box**

16.    Kroll will designate a post office box with the mailing address <<Settlement caption>>, c/o Kroll Settlement Administration LLC, P.O. Box <<####>>, New York, NY 10150-####, in order to receive Requests for Exclusion and correspondence from Class Members.

**Administration Cost**

17.    Based on Kroll's current understanding of the Settlement Class size and requested Settlement administration services, estimated administration fees are approximately $30,150 for fees, costs, and other expenses incurred for Settlement administration pursuant to the Settlement Agreement. The current estimate is subject to change depending on factors including but not limited to the actual Settlement Class size, changes to U.S. postage rates, and/or any Settlement administration scope change not currently under consideration.

**Data Use Limitation**

18.    Kroll will solely use Class Member data for notice and Settlement administration, award calculations, and issuing Settlement payments to Class Members.

**Technical Controls, Data Security**

19.    Kroll is an industry leader in data security. Kroll is CCPA, HIPAA, and GDPR compliant and maintains numerous industry certifications related to data security, including SOC2 and ISO 2700 certification.  Kroll has technical, physical, and procedural protocols and safeguards in place to ensure the security and privacy of the Class Member data. These include standards related to data retention and document destruction; fully redundant environmental systems and redundant storage; regular audits; and documented plans for both incident and crisis response, including breach protocols and physical controls. Kroll's information security program includes vulnerability management, compliance, security monitoring and security engineering supported by a team of

information security professionals, including a Chief Information Security Officer and Chief Privacy Officer.

### Business/Liability Insurance

20.     Kroll maintains standard business insurance, including professional liability insurance, cyber insurance, and crime insurance.

### Administrative Policies

21.     Kroll has employee administrative policies that all employees are required to follow. These include, but are not limited to:

- Pre-hire background checks;
- Controls for accessing systems, data and applications, along with processes for assigning access;
- Annual Code of Ethics training and certification;
- Annual Information Security training and certification; and
- HIPAA training for all staff.

### Crisis and Risk Management

22.     Kroll has defined and tested incident response and disaster recovery plans that it employs across the organization. Should an incident occur, Kroll will take immediate action, which will include notification to clients and Class Members of the incident consistent with privacy laws and regulations or as otherwise provided in any contractual agreements with its clients. Kroll also has detailed vendor on-boarding and management policies.

### Physical Access Controls

23.     Security keycard access is required to enter Kroll's facilities. Additionally, keycard access is required for employees to use the facility elevators and to enter Kroll's office spaces.

### Data Collection, Retention and Destruction

24.     Kroll only requires the collection of data necessary to effectively administer the Settlement. If personally identifiable information ("PII") (e.g., Social Security Numbers, account information, dates of birth, etc.) are not necessary for administration, Kroll will not request such PII. Kroll does not and will not share the Class Member data with third parties unless authorized or

directed to do so by Counsel for the Parties or the Court. Internally, access to data is limited to only those employees working on the particular matter. In addition, Kroll has standard practices for data retention and destruction. However, to the extent there are data retention and destruction requirements specific to the Settlement that differ from Kroll's standard policies, Kroll will follow the Settlement guidelines.

I declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge and that this declaration was executed on March 21, 2025, in Estero, Florida.

_____
SCOTT M. FENWICK

DECLARATION OF SCOTT M. FENWICK IN CONNECTION WITH PRELIMINARY APPROVAL

# Exhibit A

From:

To:

Subject: Email Notice of Proposed Class Action Settlement

Class Member ID: <<RefNum>>

# This is a Court-authorized Notice. If you served as the "volunteer coach" for an NCAA Division I baseball program between November 29, 2018 and July 1, 2023, your rights are affected by a class action Settlement. If you would like a payment under the Settlement, you <u>must</u> fill out a W-9 Form at website.com by DATE.

*Smart et al. v. National Collegiate Athletic Association*
No. 2:22-cv-02125 (E.D. Cal.)

**Why am I receiving this email Notice?** You are receiving this Notice to inform you that the Court has preliminarily approved a proposed Settlement of the case and to give you information about your legal rights under the Settlement. You have been identified as a potential Class Member in this case and may be eligible to receive money from the Settlement. This lawsuit involves a National Collegiate Athletic Association ("NCAA") Division I rule that previously designated a category of Division I baseball coaches as "volunteer coaches." The rule, officially found at NCAA Bylaw 11.7.6, was in effect from 1992 until July 1, 2023. Two former Division I baseball volunteer coaches (Taylor Smart and Michael Hacker) brought this case against the NCAA alleging that the rule violated antitrust laws.

The NCAA denies all claims in the lawsuit. The Parties have agreed to settle the case at this time to avoid the uncertainty and cost of trial and any potential appeal.

**Who is a Class Member?** You are affected by the Settlement and potentially a Class Member if you are a person who served as a "volunteer coach" as defined by NCAA Division I Bylaw 11.01.6 in men's baseball from November 29, 2018 to July 1, 2023.

**What are the benefits?** The NCAA has agreed to pay a total gross Settlement Fund of $49,250,000 to settle the case. If you participate in the Settlement, you will receive a share of this money. An expert economist will deduct the following amounts from the Settlement Fund: (i) any Court-awarded attorneys' fees (which will be no more than 30% of the Settlement Fund, or $14,775,000) and costs and expenses (estimated to be no more than $1.5 million); (ii) any Court-awarded service awards for the class representatives/named Plaintiffs (which will not exceed $15,000 total); and (iii) the fees and expenses for Settlement administration. The minimum amount to be paid (before fees and costs) per full academic year per Class Member will be **$5,000.**

**How do I get benefits?** If you are an eligible Class Member, you will receive your share of money under the Settlement and be bound by the Settlement and its release of claims. To receive a payment, **you must go to www.website.com and complete a W-9 form**. Payments will be made via check and mailed to you <u>unless you select an electronic payment option</u> by visiting www.website.com. You can update your address or select an electronic payment option on the Settlement website at www.website.com. You have until Month 00, 2025 to do so.

52854970.1

**TO RECEIVE ANY PAYMENT, YOU <u>MUST</u> SUBMIT A W-9 FORM ONLINE AT WWW.WEBSITE.COM**

**What are my other options?** If you **Do Nothing,** you will receive a payment, but you must complete a W-9 form online. You will be legally bound by the terms of the Settlement, and you will release your claims against Defendant and other Released Parties as defined in the Settlement Agreement. You may **Opt-Out** of or file an **Objection** to the Settlement and/or attorneys' fees, costs, and service awards by <<**the response deadline>>**. Please visit **www.website.com** for more information on how to receive a benefit, submit a Request for Exclusion and exclude yourself from or object to the Settlement.

**Do I have a lawyer in this case?** Yes, the Court appointed the law firm of Korein Tillery, LLC and two of its attorneys—Garrett Broshuis and Steven Berezney—to represent you and other Class Members. You will not be charged directly for these lawyers; instead, they will receive compensation from the Settlement Fund (subject to Court approval). If you want to be represented by your own lawyer, you may hire one at your own expense.

**The Court's Final Fairness Hearing.** The Court is scheduled to hold a Final Fairness Hearing on **DATE** at **TIME** PT, to consider whether to approve the Settlement, the attorneys' fees and expenses, up to 30% of the Settlement Fund ($14,775,000), plus reimbursement of costs and expenses of approximately $1.5 million, and service award payments of $7,500 to each named Plaintiff. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to attend.

This email Notice is only a summary. For more information or to change your address, visit **www.website.com** or call toll-free **(XXX) XXX-XXXX**

### PLEASE DO NOT CONTACT THE COURT OR CLERK OF THE COURTFOR INFORMATION ABOUT THE CLASS ACTION SETTLEMENT

Please monitor https://www.website.com/ for updates or call (XXX) XXX-XXXX.

This email was sent to you because you are a Class Member.| Unsubscribe

Please do not reply to this email, it is sent from an unmonitored mailbox.

# Exhibit B

*<<Settlement Caption>>*
c/o Kroll Settlement Administration LLC

New York, NY 10150-XXXX

FIRST-CLASS MAIL
U.S. POSTAGE PAID

PERMIT NO. XXXX

**ELECTRONIC SERVICE REQUESTED**

**COURT APPROVED LEGAL NOTICE**

*Smart et al. v. National Collegiate Athletic Association*
No. 2:22-cv-02125 (E.D. Cal.)

If you served as the "volunteer coach" for an NCAA Division I baseball program between November 29, 2018 and July 1, 2023, your rights are affected by a class action settlement. If you would like a payment under the settlement, you must fill out a W-9 Form at website.com by **DATE**.

*This is not a solicitation from a lawyer.*

For more information about the Settlement and how to receive benefits visit or call:

**www.website.com**
**(XXX) XXX-XXXX**

<<Refnum Barcode>>

CLASS MEMBER ID: <<Refnum>>

**Postal Service: Please do not mark barcode**

<<FirstName>> <<LastName>>
<<Address1>>
<<Address2>><<City>>, <<State>> <<Zip>>

**What is this lawsuit about?** This lawsuit involves a National Collegiate Athletic Association ("NCAA") rule that previously designated a category of Division I baseball coaches as "volunteer coaches." The rule, officially found at NCAA Division I Bylaw 11.7.6, was in effect from 1992 until July 1, 2023. Two former Division I baseball volunteer coaches (Taylor Smart and Michael Hacker) brought this case against the NCAA alleging that the rule violated federal antitrust laws. The NCAA denies all claims in the lawsuit. The Parties have agreed to settle the case at this time to avoid the uncertainty and cost of trial and any potential appeal.

**Who is a Class Member?** You are affected by the Settlement and potentially a Class Member if you are a person who served as a "volunteer coach" as defined by NCAA Division I Bylaw 11.01.6 in men's baseball from November 29, 2018 to July 1, 2023.

**What are the benefits?** The NCAA has agreed to pay a total Settlement Fund of $49,250,000 to settle the case. If you participate in the Settlement, you will receive a share of this money. An expert economist will deduct the following amounts from the Settlement Fund: (i) any Court-awarded attorneys' fees and costs (estimated to be no more than $16.275 million); (ii) any Court-awarded service awards for the class representatives/named Plaintiffs (which will not exceed $15,000 total); and (iii) the fees and expenses for Settlement administration. The minimum amount to be paid per full academic year per Class Member (before costs and fees) will be **$5,000**.

**How do I get benefits?** If you are an eligible Class Member, you will receive your share of money under the Settlement and be bound by the Settlement and its release of claims. To receive a payment, you must go to **www.website.com** and complete a W-9 form. Payments will be made via check and mailed to you unless you select an electronic payment option by visiting **www.website.com**. You can update your address or select an electronic payment option on the Settlement website at **www.website.com**. You have until **Month 00, 2025** to do so.

**What are my other options?** If you **Do Nothing,** you will receive a payment, but you must complete a W-9 form online. You will be legally bound by the terms of the Settlement, and you will release your claims against Defendant and other Released Parties as defined in the Settlement Agreement. You may **Opt-Out** of or file an **Objection** to the Settlement and/or attorneys' fees, costs, and service awards by **<<the response deadline>>**. Please visit **www.website.com** for more information on how to opt-out or object.

**Do I have a lawyer in this case?** Yes, the Court appointed the law firm of Korein Tillery, LLC and two of its attorneys—Garrett Broshuis and Steven Berezney—to represent you and other Class Members. You will not be charged directly for these lawyers; instead, they will receive compensation from the Settlement Fund (subject to Court approval). If you want to be represented by your own lawyer, you may hire one at your own expense.

**The Court's Final Fairness Hearing.** The Court is scheduled to hold a Final Fairness Hearing on **DATE at TIME PT**, to consider whether to approve the Settlement, the attorneys' fees and expenses, up to 30% of the Settlement Fund ($14.775 million), plus reimbursement of costs and expenses of approximately $1.5 million, and service award payments of $7,500 to each named Plaintiff. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to attend.

**This Notice is only a summary.** For more information or to change your address, visit **www.website.com** or call toll-free **(XXX) XXX-XXXX**

# Exhibit C

<u>NOTICE OF CLASS ACTION SETTLEMENT</u>

# If you served as the "volunteer coach" for an NCAA Division I baseball program between November 29, 2018 and July 1, 2023, your rights are affected by a class action Settlement.

*A federal court authorized this Notice.*
*This is not a solicitation from a lawyer.*

This Notice is to inform you of your legal rights and options in a proposed Settlement in the case called *Smart et al. v. National Collegiate Athletic Association*, No. 2:22-cv-02125 (E.D. Cal.). **Please read this Notice carefully.**

This is an antitrust case involving baseball coaches who served in the position designated as "volunteer coach" under National Collegiate Athletic Association ("NCAA") Division I rules. Eligible Class Members will receive a share of the Settlement money based on several factors, including the school that they served at and the number of years served within the relevant period, as explained in Section 6 below. Records indicate that you served as the volunteer coach for an NCAA Division I baseball program between November 29, 2018 and July 1, 2023. If those records are accurate, below is a summary of your rights and options.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **PARTICIPATE IN THE SETTLEMENT** | If you are an eligible Class Member and do nothing other than submit your address and W-9, you will receive your share of money under the Settlement and be bound by the Settlement and its release of claims. <br><br> • Payments will be made via check and mailed to you <u>unless you select an electronic payment option</u> by visiting the Settlement website, **www.website.com**. <br> • You can update your address or select an electronic payment option on the Settlement website at: [INSERT] You have until **Month 00, 2025** to do so. <br> • **To receive a payment, you <u>must</u> complete a W-9 form at www.website.com.** |
| **EXCLUDE YOURSELF OR "OPT OUT"** | If you do not wish to participate or be bound by the Settlement and Plaintiff Released Claims, you must send a Request for Exclusion to the Settlement Administrator by **Month x, 2025**. Instructions for sending a Request for Exclusion are provided in Section 14 below.  If you exclude yourself from ("opt out" of) the Settlement, you <u>will not</u> receive any payment under the Settlement. |
| **OBJECT** | If you do not exclude yourself from the Settlement and you do not believe that the Settlement is fair and reasonable, you may write to the Court to tell it why.  Written objections must be submitted to the Court by **Month x, 2025**. If the Court rejects your objection, you will be bound by the terms of the Settlement. |

| WHAT THIS NOTICE CONTAINS |
|:---:|

**Basic Information**......................................................................................................................**3**

    1.    What is the purpose of this Notice? .............................................................................. 3

    2.    What is the lawsuit about and who is involved?........................................................... 3

    3.    What is a class action? ................................................................................................. 3

    4.    Who is in the Settlement Class in this case?................................................................ 3

    5.    Who represents the Settlement Class? ......................................................................... 4

**The Settlement Benefits**.........................................................................................................**4**

    6.    What are the benefits under the proposed Settlement? ................................................ 4

    7.    What am I giving up in return for receiving the Settlement benefits?.......................... 5

    8.    How will Class Counsel be paid? ................................................................................ 5

    9.    Why are the named Plaintiffs asking for service awards? .......................................... 5

**Your Rights and Options** ......................................................................................................**5**

    10.    What are my options under the Settlement? ................................................................ 5

    11.    How do I participate in the Settlement and receive money from it? ............................ 6

    12.    How do I update my contact information, receive an electronic payment?................... 6

    13.    What if I have an objection to the Settlement?............................................................ 6

    14.    How do I exclude myself from (opt out of) the Settlement Class?............................... 7

    15.    What happens if I exclude myself from (opt out of) the Settlement Class? ................. 7

    16.    What happens if I stay in the Settlement Class?.......................................................... 7

**The Final Fairness Hearing**..................................................................................................**8**

    17.    When and where will the Court decide whether to approve the Settlement? ............... 8

**Getting More Information** ....................................................................................................**8**

    18.    How do I get more information?.................................................................................. 8

52854969.1

2

Questions? Visit www.[INSERT].com or call toll-free at [INSERT]

## BASIC INFORMATION

| | |
|---|---|
| **1.** | **What is the purpose of this Notice?** |

This Notice is to inform you that the Court has preliminarily approved a proposed Settlement of the case and to give you information about your legal rights under the Settlement. You have been identified as a potential Class Member in this case and may be eligible to receive money from the Settlement.

The Court has scheduled a hearing on whether to finally approve the Settlement on _____, 2025 at _____.m. in Courtroom 5, 14th Floor, U.S. District Court for the Eastern District of California, 501 I Street, Sacramento, CA 95814. The date of the hearing may change without further notice to the class, so check the Settlement website or the Court's Public Access to Court Electronic Records ("PACER") website (see Section 18, below) to confirm the date and whether the hearing will be conducted in person or remotely.

| | |
|---|---|
| **2.** | **What is the lawsuit about and who is involved?** |

This lawsuit involves an NCAA Division I rule that previously designated a category of Division I baseball coaches as "volunteer coaches." The rule, officially found at NCAA Bylaw 11.7.6, was in effect from 1992 until July 1, 2023. Two former Division I baseball volunteer coaches (Taylor Smart and Michael Hacker) brought this case against the NCAA alleging that the rule violated antitrust laws.

The NCAA denies all claims in the lawsuit. The Parties have agreed to settle the case at this time to avoid the uncertainty and cost of trial and any potential appeal.

The judge in the case is the Honorable William B. Shubb. He is a federal judge for the United States District Court for the Eastern District of California.

This case was filed as a class action.

| | |
|---|---|
| **3.** | **What is a class action?** |

In a class action lawsuit, one or more people or businesses called class representatives (i.e., the Plaintiffs) sue on behalf of others who have similar claims, all of whom together are a "class." Individual class members do not have to file a lawsuit to participate in the class action, or be bound by the judgment in the class action. One court resolves the issues for everyone in the class, except for those who exclude themselves from the class.

This is a type of class action that involves claims for money damages. The "class definition" identifies who is included in the class.

Class Members do not have to do anything to be included in the class. Potential Class Members who do _not_ wish to be included in the class must affirmatively "opt out" by requesting that the court exclude them. Any person included in the class definition who does not opt out of a class will be bound by any judgment or Settlement entered in the case.

| | |
|---|---|
| **4.** | **Who is in the Settlement Class in this case?** |

This proposed Settlement Class is defined as follows:

- All persons who, pursuant to NCAA Division I Bylaw 11.7.6, served as a "volunteer coach" in college baseball at an NCAA Division I school from November 29, 2018, and July 1, 2023.

You do not need to take any action to become a Class Member if you meet the definition above. We have identified the persons in the Settlement Class from records produced in the case and from public records.

| 5. | Who represents the Settlement Class? |
|---|---|

The Court appointed the law firm of Korein Tillery, LLC and two of its attorneys—Garrett Broshuis and Steven Berezney—as Class Counsel to represent Class Members. Contact information for the lead attorneys working on the case from this firm is listed below:

Garrett R. Broshuis                                    Steven M. Berezney
**KOREIN TILLERY, LLC**                              **KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600            505 North 7th Street, Suite 3600
St. Louis, MO 63101                              St. Louis, MO 63101
(314) 241-4844                                      (314) 241-4844
gbroshuis@koreintillery.com                sberezney@koreintillery.com

If you want to be represented by your own lawyer, you are free to hire one at your own expense.

## THE SETTLEMENT BENEFITS

| 6. | What are the benefits under the proposed Settlement? |
|---|---|

A summary of the monetary benefits the proposed Settlement provides to Class Members is as follows.

### Monetary benefits

The NCAA has agreed to pay a total gross amount of $49,250,000 to settle the case (the Settlement Fund). If you participate in the Settlement and provide your address and the required W-9, you will receive a share of this money. Each Class Member's "settlement payment" will be determined as summarized below.

First, an expert economist will deduct the following amounts from the Settlement Fund: (i) any Court-awarded attorneys' fees (which will be no more than 30% of the settlement fund, or $14,775,000) and costs and expenses (estimated to be no more than $1.5 million); (ii) any Court-awarded service awards for the class representatives/named Plaintiffs (which will not exceed $15,000 total); and (iii) the fees and expenses for Settlement administration.

The amount remaining after these deductions will be the "net settlement fund." Each Class Member's Settlement payment will consist of his proportional share of the net settlement fund.

To calculate each Class Member's proportional share, the expert will use the available records to determine the school(s) that the Class Member worked for, and the years worked between November 29, 2018, and July 1, 2023.

The expert will use records showing the salaries being paid to Division I third assistant coaches after July 1, 2023, to estimate the potential damages for each Class Member. The expert takes into account inflation-related factors, meaning that the number is reduced by each year in the relevant period. If the expert lacks records for a particular school, the expert will estimate the potential damages for the affected Class Member by looking at records from other schools. The minimum amount to be paid per full academic year per Class Member will be **$5,000**.

The expert will add up each participating Class Member's "individual damages" to get the aggregate total for all participating Class Members. The expert will then calculate each Class Member's proportional share of the net settlement fund and resulting individual settlement payment. Thus, the payments will vary depending on the school the class member coached at and the number of years coached within the class period.

Be aware that Class Member's Settlement payment may be taxable. We are not tax advisors. If you have questions regarding any issues relating to taxes, please check with your tax professional.

| 7. | **What am I giving up in return for receiving the Settlement benefits?** |

In order to receive the monetary benefits, participating Class Members must give the Released Parties (defined below) a release of claims. A release of claims is where one party agrees to give up legal claims (or causes of action) he has against another party in exchange for something of value. A release operates to cut off the releasing party's ability to sue the released party on the released claims. The scope of those claims that you would be giving up is described in "Released Claims" below.

The claims and parties you will release if you remain in the Settlement Class are described in detail in the Settlement Agreement. In summary:

The Released Parties: the NCAA and all of the NCAA's past or present members with any Division I baseball programs from November 29, 2018 to July 1, 2023 as well as all of the directors, trustees, officers, employees, subsidiaries, parents, legal representatives, predecessors, successors, affiliates, agents, attorneys, shareholders, related entities and divisions, and their successors and assigns of the Defendant and its past or present members with Division I baseball programs during the Class Period.

The Plaintiff Released Claims: Any and all claims from November 29, 2018 until July 1, 2023 that any Division I volunteer baseball coach has asserted or could have asserted as of January 31, 2025, known or unknown, including for the avoidance of doubt any claim for unpaid wages, benefits, or bonuses, or any claim for damages for lost opportunities, interference with contract, or restraint of trade. Plaintiff Released Claims include, without limitation, any claims for compensation, benefits, penalties or any other recovery on the theory that any Division I volunteer baseball coach was an employee of, or a contractor for, any Released Parties, and thus include, without limitations, claims under state and federal minimum wage laws, the federal Fair Labor Standards Act, state and local wage and hour statutes and laws, including without limitation any claims under the California Labor Code and California Labor Code section 2698 et seq. specifically as well as California Business & Professions Code section 17200 and equivalent statutes from other states.

| 8. | **How will Class Counsel be paid?** |

Class Counsel will request an award of attorneys' fees of up to 30% of the Settlement Fund, or $14,775,000, and reimbursement of costs and expenses of up to $1.5 million. These costs consist primarily of amounts paid for deposition transcripts, travel for depositions and mediation, expert witness fees, and plaintiffs' portion of the mediator's fee. Class Counsel's motion for an award of fees and costs will include the final amount of fees and costs requested and the supporting law and facts. The motion will be filed with the Court by _____, 2025 and will be posted at [WEBSITE]. The Court will determine the actual amounts to award to Class Counsel for fees and costs after the Final Fairness Hearing once it has ensured the amounts are reasonable. The Settlement Administrator will pay any court-awarded attorneys' fees and costs directly from the Settlement Fund.

| 9. | **Why are the named Plaintiffs asking for service awards?** |

In addition to any amount they are entitled to receive by participating in the Settlement, the two named Plaintiffs who brought this lawsuit will ask the Court to approve "service awards" for them. Service Awards are amounts given to individuals who bring a class action to recognize the risk they took in bringing the lawsuit and the effort they put into advancing the interests of the class by doing things like answering written discovery and sitting for depositions. The two named Plaintiffs will request service awards of $7,500 each. The motion for service awards will be filed with the Court by _____ and will be posted at [WEBSITE]. The Court will decide the actual amount, if any, of the service award to be given to each named Plaintiff after the Final Fairness Hearing.

52854969.1

5

Questions? Visit www.[INSERT].com or call toll-free at [INSERT]

## YOUR RIGHTS AND OPTIONS

| | |
|---|---|
| **10.** | **What are my options under the Settlement?** |

You have several options: 1) participate in the Settlement and receive your share of the net settlement fund; 2) object to the Settlement by submitting a written objection; or 3) opt out of the Settlement by submitting a written Request for Exclusion. Details about each option and how each option will affect your legal rights are explained below. You can both participate in the Settlement and object, but if you opt out of the Settlement, you cannot participate in the Settlement or object.

| | |
|---|---|
| **11.** | **How do I participate in the Settlement and receive money from it?** |

Once the Settlement approval process and Settlement administration process is finalized Class Members will be sent a check for their share of the Settlement proceeds. *Class Members must visit* [WEBSITE] *to provide an address or other information to allow for an electronic payment by* **[the response deadline]**.  In addition, Class Members must also provide the Settlement Administrator W-9 information as the Settlement payments may be taxable to the Class Member.

To update a mailing or e-mail address, or if a Class Member would like to receive their payment electronically rather than by a paper check, they should visit [WEBSITE] by **[the response deadline]** and follow the instructions to notify the Settlement Administrator.

Payments will be made after Final Approval by the Court and after the Settlement becomes "effective." The Settlement will become effective after the time for appealing the Court's decision granting Final Approval of the Settlement has passed or, if an appeal is filed, after all appeals are finally resolved in favor of Final Approval.

If you accept a payment under the settlement, you will be deemed to have opted in to the litigation for purposes of any claims under the Fair Labor Standards Act under federal law, which are part of the claims that will be released if you do not opt out of the settlement.

If you do not cash your Settlement check within 120 calendar days of receipt, we will consider your share "unclaimed." If 120 days have passed, Class Members will have 30 calendar days to contact the Settlement Administrator to request that a check be re-issued. The Settlement Administrator will use any unclaimed funds to make a second *pro rata* distribution to those Class Members who did timely accept their Settlement payments unless Class Counsel and the Settlement Administrator conclude the total amount of unclaimed funds is too small to justify a second distribution. If that happens, the unclaimed funds will instead be paid to a court-appointed charity under the doctrine of "*cy pres*." Plaintiffs have asked the Court to appoint the American Baseball Coaches Association as the *cy pres* awardee in this case, and the Court will consider the matter at the Final Fairness Hearing.

If the Court grants Final Approval of the Settlement, no amount of money will be returned to Defendant under any circumstances. In other words, every penny of the maximum settlement amount will go to Class Members, their counsel, Settlement administration costs, and any *Cy Pres* Awardee.

| | |
|---|---|
| **12.** | **How do I update my contact information, receive an electronic payment?** |

Please visit [WEBSITE] by **[the response date]** and follow the instructions if you need to do any of the following:

- Update an e-mail or physical mailing address; or
- Request an electronic payment rather than a check.

| | |
|---|---|
| **13.** | **What if I have an objection to the Settlement?** |

Participating Class Members who do not submit a Request for Exclusion may object to the Settlement. Class Members can ask the Court to deny approval by filing an objection. One cannot ask the Court to order a different Settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no Settlement payments will be made and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed Settlement must be in writing. If a Class Member files a timely written objection, they may, but are not required to, appear at the Final Fairness Hearing, either in person or through their own attorney. If a Class Member appears through their own attorney, they are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number *Smart v. National Collegiate Athletic Association*, No. 2:22-cv-02125 (E.D. Cal.), (b) be submitted to the Court either by mailing them or submitting them in person to the Office of the Clerk, addressed below, or by electronically filing them with the Court, and (c) be filed or postmarked on or before **[response deadline]**.

| **Clerk of the Court** |
| --- |
| Clerk of the Court<br>United States District Court for the Eastern District of California<br>501 I Street<br>Sacramento, CA 95814 |

EVEN IF A CLASS MEMBER OBJECTS, THEY WILL BE CONSIDERED TO HAVE PARTICIPATED IN THE SETTLEMENT AND WILL RECEIVE THEIR SHARE OF THE SETTLEMENT FUND AND BE BOUND BY THE RELEASE OF CLAIMS IF THE COURT APPROVES THE SETTLEMENT OVER THEIR OR ANY OTHER OBJECTION.

### 14.    How do I exclude myself from (opt out of) the Settlement Class?

If you do not want to be included in the Settlement Class, you need to "opt out" by mailing a Request for Exclusion to the Settlement Administrator, which must be postmarked by **[the response deadline].** The mailing address for the administrator can be found at the end of this notice.

The Request for Exclusion must contain: (1) the name and case number of this lawsuit (*Smart v. National Collegiate Athletic Association*, No. 2:22-cv-02125 (E.D. Cal.)); (2) your name; (3) your address, phone number, and e-mail address; (4) the school(s) and approximate dates you served as a "volunteer coach"; (5) a simple statement that you wish to exclude yourself from the class; and (6) your signature.

You will remain a member of the class if you do not timely opt out.

### 15.    What happens if I exclude myself from (opt out of) the Settlement Class?

If you timely submit a written Request for Exclusion from the class in the manner described above, you will not be a member of the class. You will not participate in these proceedings or the Settlement. You will not be subject to the release of claims or receive any money from the Settlement.

### 16.    What happens if I stay in the Settlement Class?

Class Members will be bound by the Settlement and the judgment the Court enters in the case. If finally approved, the Settlement Agreement will have the same force and effect on absent Class Members as if each of them had signed it personally. This includes any applicable release of claims. Unless you timely request exclusion in the manner described above, the Plaintiff Released Claims applies to you *regardless of whether you accept payment under the Settlement or object*.

## THE FINAL FAIRNESS HEARING

### 17.    When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Fairness Hearing at \_\_\_\_\_ \_\_.m. on _____, 2025, at the U.S. District Court for the Eastern District of California, Courtroom 5, 14th Floor, 501 I Street, Sacramento, CA 95814. The hearing may be conducted remotely via video or telephone conference as determined by the Court. At the hearing, the Court will listen to anyone who wishes to speak in support of or in opposition to the Settlement and will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider Class Counsel's request for attorneys' fees and costs and the request for the named Plaintiffs' service awards. The Court may reschedule the Final Fairness Hearing without further notice to the classes. Please check [WEBSITE] or the Court's PACER system to verify the date has not changed and whether the hearing will be conducted in person or remotely.

WHILE YOU ARE WELCOME TO ATTEND THE FINAL FAIRNESS HEARING EITHER PERSONALLY OR BY COUNSEL HIRED AT YOUR OWN EXPENSE, YOU DO NOT NEED TO APPEAR. CLASS COUNSEL WILL APPEAR AT THE HEARING ON BEHALF OF THE SETTLEMENT CLASSES, INCLUDING YOU.

## GETTING MORE INFORMATION

### 18.    How do I get more information?

This Notice only summarizes the proposed Settlement. You can find the Settlement Agreement and other important documents in the case on the Settlement website:

[WEBSITE]

You may access the Court docket and any other publicly filed documents in this case, for a fee, through the Court's PACER system at https://ecf.caed.uscourts.gov., or by visiting the office of the Clerk of the Court for the United States District Court for the Eastern District of California, Sacramento Courthouse.

PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE SETTLEMENT PROCESS.

If you have questions about the Settlement or Settlement process, please contact Class Counsel (contact information in Section 5, above) or the court-appointed Settlement Administrator, Kroll Settlement Administration LLC:

E-mail: [INSERT]

Phone: [INSERT]

Mailing Address: <<Settlement caption>>, c/o Kroll Settlement Administration LLC, P.O. Box XXXX New York, NY 10150-XXXX