1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11

12   TAYLOR SMART AND MICHAEL HACKER,    No. 2:22-cv-02125 WBS CSK
     Individually and on Behalf of
13   All Those Similarly Situated,

14              Plaintiffs,
                                         MEMORANDUM AND ORDER RE:
15        v.                             PLAINTIFFS' MOTION FOR
                                         PRELIMINARY APPROVAL OF CLASS
16   NATIONAL COLLEGIATE ATHLETIC        ACTION SETTLEMENT
     ASSOCIATION, an unincorporated
17   association,

18              Defendant.

19

20                              ----oo0oo----

21              Plaintiffs Taylor Smart and Michael Hacker brought this

22   putative class action against defendant National Collegiate

23   Athletic Association ("NCAA"), alleging violations of section 1

24   of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Unfair

25   Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.  (See

26   Docket Nos. 1, 29.)  Plaintiffs have filed an unopposed motion

27   for preliminary approval of class action settlement.  (See Docket

28   No. 73.)

                                    1

1  I.    Background and Proposed Settlement

2          This is one of two related cases assigned to the

3  undersigned judge that involve antitrust challenges to a since-

4  repealed NCAA bylaw barring "volunteer coaches" from receiving

5  pay (hereinafter, "Volunteer Coach Bylaw").  The undersigned

6  recently granted a motion for class certification in the related

7  case.  See Ray v. Nat'l Collegiate Athletic Ass'n, No. 1:23-cv-

8  00425 WBS CSK, 2025 WL 775753 (E.D. Cal. Mar. 11, 2025).

9          The proposed class in this action consists of "[a]ll

10  persons who, pursuant to NCAA Division I Bylaw 11.7.6, served as

11  a 'volunteer coach' in college baseball at an NCAA Division I

12  school from November 29, 2018 to July 1, 2023."[1]  (See Settlement

13  Agreement (Docket No. 73-1 at 24-45) ¶ 2.29.)

14          The parties propose a gross settlement amount of

15  $49,250,000, which includes the following: (a) $32,794,850 for

16  payments to class members; (b) up to 33.33% of the gross

17  settlement amount for plaintiffs attorneys' fees and up to $1.5

18  million for costs and expenses incurred; (c) $30,150 to pay the

19  settlement administrator and $35,000 to pay the expert economist

20  for work on settlement administration; (d) incentive awards for

21  the two class representatives of $7,500 each; and (e) a

22  contingency fund of $100,000.  (See Settlement Agreement.)

23          The amount to be paid to each class member will be a

24  proportional share of the fund based on the damages model

25  _____

26          [1]    The class certified in Ray consists of "[a]ll persons
who, from March 17, 2019, to June 30, 2023, worked for an NCAA

27  Division I sports program other than baseball in the position of
'volunteer coach,' as designated by NCAA Bylaws."  2025 WL

28  775753, at *11 (emphasis added).

1    developed by plaintiffs' expert, Dr. Daniel Rascher, which

2    accounts for several factors including employer and number of

3    years worked.  (See Settlement Agreement ¶ 8.4.2; Exp. Rep. of

4    Daniel Rascher (Docket No. 63-30).)

5    II.  Discussion

6            Federal Rule of Civil Procedure 23(e) provides that

7    "[t]he claims, issues, or defenses of a certified class may be

8    settled . . . only with the court's approval."  Fed. R. Civ. P.

9    23(e).  This Order is the first step in that process and analyzes

10   only whether the proposed class action settlement deserves

11   preliminary approval.  See Murillo v. Pac. Gas & Elec. Co., 266

12   F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).  Preliminary

13   approval authorizes the parties to give notice to putative class

14   members of the settlement agreement and lays the groundwork for a

15   future fairness hearing, at which the court will hear objections

16   to (1) the treatment of this litigation as a class action and (2)

17   the terms of the settlement.  See id.; Diaz v. Tr. Territory of

18   Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989).  The court

19   will reach a final determination as to whether the parties should

20   be allowed to settle the class action on their proposed terms

21   after that hearing.

22            Where the parties reach a settlement agreement prior to

23   class certification, the court must first assess whether a class

24   exists.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

25   "Such attention is of vital importance, for a court asked to

26   certify a settlement class will lack the opportunity, present

27   when a case is litigated, to adjust the class, informed by the

28   proceedings as they unfold."  Id. (quoting Amchem Prods. Inc. v.

1   _Windsor_, 521 U.S. 591, 620 (1997)).  The parties cannot "agree to

2   certify a class that clearly leaves any one requirement

3   unfulfilled," and consequently the court cannot blindly rely on

4   the fact that the parties have stipulated that a class exists for

5   purposes of settlement.  See _Amchem_, 521 U.S. at 621-22.

6          "Second, the district court must carefully consider

7   'whether a proposed settlement is fundamentally fair, adequate,

8   and reasonable,' recognizing that '[i]t is the settlement taken

9   as a whole, rather than the individual component parts, that must

10  be examined for overall fairness . . . .'"  _Staton_, 327 F.3d at

11  952 (quoting _Hanlon v. Chrysler Corp._, 150 F.3d 1011, 1026 (9th

12  Cir. 1998)), _overruled on other grounds by Wal-Mart Stores, Inc._

13  _v. Dukes_, 564 U.S. 338 (2011).

14       A.   Class Certification

15          To be certified, the putative class must satisfy the

16  requirements of Federal Rules of Civil Procedure 23(a) and 23(b).

17  _Leyva v. Medline Indus. Inc._, 716 F.3d 510, 512 (9th Cir. 2013).

18            1.   Rule 23(a)

19          Rule 23(a) restricts class actions to cases where: "(1)

20  the class is so numerous that joinder of all members is

21  impracticable [numerosity]; (2) there are questions of law or

22  fact common to the class [commonality]; (3) the claims or

23  defenses of the representative parties are typical of the claims

24  or defenses of the class [typicality]; and (4) the representative

25  parties will fairly and adequately protect the interests of the

26  class [adequacy of representation]."  See Fed. R. Civ. P. 23(a).

27            a.   Numerosity

28          "Although 'no specific minimum number of plaintiffs

asserted' is required to obtain class certification, 'a proposed class of at least forty members presumptively satisfies the numerosity requirement.'"  Alger v. FCA US LLC, 334 F.R.D. 415, 422 (E.D. Cal. 2020) (England, J.) (quoting Nguyen v. Radient Pharmaceuticals Corp., 287 F.R.D. 563, 569 (C.D. Cal. 2012)).

The evidence before the court indicates that the putative class has approximately 1,000 members.  (See Broshuis Decl. (Docket No. 73-1) ¶ 8.)  The proposed class therefore satisfies the numerosity requirement.

b.    Commonality

Commonality requires that the class members' claims "depend upon a common contention" that is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, 564 U.S. at 350.  "[A]ll questions of fact and law need not be common to satisfy the rule," and the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Hanlon, 150 F.3d at 1019.  "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013) (internal citation and quotation marks omitted).

Here, "[t]he question of whether the Volunteer Coach Bylaw violated antitrust law is common to the entire class."  Ray, 2025 WL 775753, at *6.  "Antitrust liability alone constitutes a common question that will resolve an issue that is

5

1  central to the validity of each class member's claim in one
2  stroke, because proof of an alleged conspiracy will focus on
3  defendants' conduct and not on the conduct of individual class
4  members." Id. (quoting In re High-Tech Emp. Antitrust Litig.,
5  985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013)).  Because plaintiffs
6  have identified a common question applicable to the whole class,
7  they have satisfied the commonality requirement for purposes of
8  preliminary approval.

9          c.   Typicality

10         Typicality requires that named plaintiffs have claims
11 "reasonably coextensive with those of absent class members," but
12 their claims do not have to be "substantially identical."
13 Hanlon, 150 F.3d at 1020.  The test for typicality "is whether
14 other members have the same or similar injury, whether the action
15 is based on conduct which is not unique to the named plaintiffs,
16 and whether other class members have been injured by the same
17 course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497,
18 508 (9th Cir. 1992) (citation omitted).

19         "Here, each class representative -- like each class
20 member -- worked as a volunteer [baseball] coach at an NCAA
21 Division I school, was subject to the NCAA's Volunteer Coach
22 Bylaw precluding them from receiving compensation, and alleges
23 antitrust injury under the Sherman Act." See Ray, 2025 WL
24 775753, at *6.  "'[T]his uniformity of class members' injuries,
25 claims, and legal theory is typically sufficient to satisfy Rule
26 23(a)(3).'" See id. (quoting In re NCAA Student-Athlete Name &
27 Likeness Licensing Litig., No. 09-cv-1967 CW, 2013 WL 5979327, at
28 *5 (N.D. Cal. Nov. 8, 2013)).  Because there do not appear to be

"any unique defenses which threaten to become the focus of the litigation" that would cut against these similarities, see Hanon, 976 F.2d at 508, plaintiffs have satisfied the typicality requirement for purposes of preliminary approval.

d.   Adequacy of Representation

To resolve the question of adequacy, the court must consider two factors: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class.   In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 566 (9th Cir. 2019).

i.   Conflicts of Interest

The first portion of the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Kim v. Allison, 87 F.4th 994, 1000 (9th Cir. 2023) (quoting Amchem, 521 U.S. at 625).  Here, the class representatives "possess the same interest and suffer[ed] the same [alleged] injury as the class members," indicating that their interests are "aligned."  See Amchem, 521 U.S. at 625-26.

While the provision of incentive awards raises the possibility that the named plaintiffs' interest in receiving that award will cause their interests to diverge from the class's interest in a fair settlement, the Ninth Circuit has specifically approved the award of "reasonable incentive payments." Staton, 327 F.3d at 977-78.  The court, however, must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Sys.,

7

1    <u>Inc.</u>, 715 F.3d 1157, 1163 (9th Cir. 2013).  In assessing the

2    reasonableness of incentive payments, the court should consider

3    "the actions the plaintiff has taken to protect the interests of

4    the class, the degree to which the class has benefitted from

5    those actions" and "the amount of time and effort the plaintiff

6    expended in pursuing the litigation."  <u>Staton</u>, 327 F.3d at 977

7    (citation omitted). The court must balance "the number of named

8    plaintiffs receiving incentive payments, the proportion of the

9    payments relative to the settlement amount, and the size of each

10   payment."  <u>Id.</u>

11        Courts have found that "a $5,000 incentive award is

12   'presumptively reasonable' in the Ninth Circuit."  <u>See</u> <u>Roe v.</u>

13   <u>Frito-Lay, Inc.</u>, No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D.

14   Cal. Apr. 7, 2017); <u>see also</u> <u>Hopson v. Hanesbrands Inc.</u>, 08-cv-

15   0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (citing

16   <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 463 (9th Cir.

17   2000)); <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652, 669 (E.D. Cal.

18   2008) (Shubb, J.).

19        Although the $7,500 incentive awards provided for by

20   the settlement exceed the presumptively reasonable amount, the

21   incentive awards are considerably lower than the average recovery

22   of each class member and constitute approximately one-third of

23   one percent of the gross settlement amount.  This indicates that

24   the incentive awards represent neither "an unreasonably high

25   proportion of the overall settlement amount" nor an amount

26   "disproportionate relative to the recovery of other class

27   members."  <u>See</u> <u>Wagner v. County of Inyo</u>, No. 1:17-cv-00969 DAD

28   JLT, 2018 WL 5099761, at *7 (E.D. Cal. Oct. 18, 2018).  Further,

1   the proposed incentive awards appear appropriate given the

2   efforts of the class representatives -- including extensive

3   document production and sitting for depositions (see Broshuis

4   Decl. ¶¶ 7, 9) -- and the "financial or reputational risk

5   undertaken in bringing the action."  See Rodriguez v. West Publ'g

6   Corp., 563 F.3d 948, 958-59 (9th Cir. 2009).  Accordingly, there

7   are no conflicts of interest precluding class certification for

8   purposes of preliminary approval.

9                  ii.  Vigorous Prosecution

10          The second portion of the adequacy inquiry examines the

11  vigor with which the named plaintiffs and their counsel have

12  pursued the class's claims.  "Although there are no fixed

13  standards by which 'vigor' can be assayed, considerations include

14  competency of counsel and, in the context of a settlement-only

15  class, an assessment of the rationale for not pursuing further

16  litigation."  Hanlon, 150 F.3d at 1021.

17          Plaintiffs are represented by the firm Korein Tillery,

18  LLC.  The information before the court indicates that plaintiffs'

19  counsel possesses extensive experience and strong qualifications

20  in litigating complex class actions, including antitrust cases.

21  (See Ex. 1 to Broshuis Decl.)  Plaintiffs' counsel represents

22  that they have expended thousands of hours and considerable

23  resources in litigating this case thus far.  (See Broshuis Decl.

24  ¶¶ 17, 19.)  The court's review of the docket and plaintiffs'

25  filings supports this conclusion.  There is no indication that

26  the named plaintiffs will fail to vigorously prosecute this case.

27  (See id. ¶¶ 7, 9 (describing named plaintiffs' efforts to support

28  this litigation, including producing extensive documents for

1    discovery and sitting for depositions.)

2            The court finds no reason to doubt that plaintiffs'

3    counsel is well qualified to conduct this litigation and assess

4    the value of the settlement.  As discussed in greater detail

5    below, counsel has provided an appropriate rationale for not

6    pursuing further litigation.  Accordingly, the court concludes

7    that plaintiffs and their counsel satisfy Rule 23(a)'s adequacy

8    requirement for the purpose of preliminary approval.

9            2.   Rule 23(b)

10           After fulfilling the threshold requirements of Rule

11   23(a), the proposed class must satisfy the requirements of one of

12   the three subdivisions of Rule 23(b).  Leyva, 716 F.3d at 512.

13   Plaintiffs seek certification under Rule 23(b)(3), which provides

14   that a class action may be maintained only if (1) "the court

15   finds that questions of law or fact common to class members

16   predominate over questions affecting only individual members" and

17   (2) "that a class action is superior to other available methods

18   for fairly and efficiently adjudicating the controversy."  Fed.

19   R. Civ. P. 23(b)(3).

20           a.   Predominance

21           "The predominance inquiry asks whether the common,

22   aggregation-enabling, issues in the case are more prevalent or

23   important than the non-common, aggregation-defeating, individual

24   issues." Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods

25   LLC, 31 F.4th 651, 664 (9th Cir. 2022) (quoting Tyson Foods, Inc.

26   v. Bouaphakeo, 577 U.S. 442, 453, 136 (2016)).  "When one or more

27   of the central issues in the action are common to the class and

28   can be said to predominate, the action may be considered proper

1  under Rule 23(b)(3) even though other important matters will have

2  to be tried separately, such as damages or some affirmative

3  defenses peculiar to some individual class members." Tyson

4  Foods, 577 U.S. at 453 (cleaned up).

5       "'The question of whether an antitrust violation under

6  Section 1 exists naturally lends itself to common proof, because

7  that determination turns on defendants' conduct and intent along

8  with the effect on the market, not on individual class members.'"

9  Ray, 2025 WL 775753, at *8 (quoting In re Coll. Athlete NIL

10 Litig., No. 20-cv-03919 CW, 2023 WL 8372787, at *8 (N.D. Cal.

11 Nov. 3, 2023)).  Although there are differences in the facts

12 pertaining to individual class members and the amount of injury

13 sustained, there is no indication that those variations are

14 "sufficiently substantive to predominate over the shared claims."

15 See Murillo, 266 F.R.D. at 476 (quoting Hanlon, 150 F.3d at

16 1022).  Plaintiffs have proffered a common method of proof -- the

17 statistical model developed by Dr. Rascher -- which appears

18 "capable of showing that the [proposed class] members suffered

19 antitrust impact on a class-wide basis."  See Olean, 31 F.4th at

20 681; see also Ray, 2025 WL 775753, at *10.  Accordingly,

21 plaintiffs have established that common questions of law and fact

22 predominate.

23            b.  Superiority

24       The second part of the inquiry under Rule 23(b)(3) asks

25 whether "a class action is superior to other available methods

26 for fairly and efficiently adjudicating the controversy."

27 "Generally, the factors relevant to assessing superiority include

28 '(A) the class members' interests in individually controlling the

1    prosecution or defense of separate actions; (B) the extent and

2    nature of any litigation concerning the controversy already begun

3    by or against class members; (C) the desirability or

4    undesirability of concentrating the litigation of the claims in

5    the particular forum; and (D) the likely difficulties in managing

6    a class action.'"  Wolin v. Jaguar Land Rover N. Am., LLC, 617

7    F.3d 1168, 1175 (9th Cir. 2010) (quoting Fed. R. Civ. P.

8    23(b)(3)).

9         The proposed class contains approximately 1,000

10   individuals, and the parties have not identified any competing

11   litigation involving members of the proposed class.  "It appears

12   unlikely that the amount of damages each coach suffered is high

13   enough to make individual litigation an efficient method of

14   resolving their claims, especially given the complexity of

15   antitrust litigation and the presence of several common legal and

16   factual questions."  See Ray, 2025 WL 775753, at *11.  "Forcing

17   individual [class members] to litigate their cases, particularly

18   where common issues predominate for the proposed class," would be

19   "an inferior method of adjudication."  See Wolin, 617 F.3d at

20   1176.  Accordingly, "class-wide adjudication of 'common issues

21   will reduce litigation costs and promote greater efficiency,'"

22   and the superiority requirement is satisfied.  See id. (quoting

23   Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir.

24   1996)).

25            3.   Rule 23(c)(2) Notice Requirements

26        If the court certifies a class under Rule 23(b)(3), it

27   "must direct to class members the best notice that is practicable

28   under the circumstances, including individual notice to all

1  members who can be identified through reasonable effort." Fed.

2  R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

3  content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

4  651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

5  417 U.S. 156, 172-77 (1974)).  Although that notice must be

6  "reasonably certain to inform the absent members of the plaintiff

7  class," actual notice is not required.  Silber v. Mabon, 18 F.3d

8  1449, 1454 (9th Cir. 1994) (citation omitted).

9        Plaintiffs' counsel has provided the court with a

10  proposed email notice and proposed postcard notice to be sent

11  class members.  (See Docket No. 73-3 at 57-62.)  The proposed

12  notices explain the proceedings, define the scope of the class,

13  and explain what the settlement provides and the minimum amount

14  each class member can expect to receive in compensation.  (See

15  id.)  The notices further explain the opt-out procedure, the

16  procedure for objecting to the settlement, and the date and

17  location of the final approval hearing.  (See id.)  The content

18  of the notices therefore satisfies Rule 23(c)(2)(B).  See Fed. R.

19  Civ. P. 23(c)(2)(B); Churchill Vill., L.L.C. v. Gen. Elec., 361

20  F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it

21  'generally describes the terms of the settlement in sufficient

22  detail to alert those with adverse viewpoints to investigate and

23  to come forward and be heard.'") (quoting Mendoza v. Tucson Sch.

24  Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

25        The parties have selected Kroll Settlement

26  Administration LLC to serve as the Settlement Administrator.

27  Pursuant to the notice plan, the Settlement Administrator will

28  provide direct mail notice to each class member at his or her

1  last known address, performing an additional address search

2  process to locate other mailing addresses as necessary.  (See

3  Fenwick Decl. (Docket No. 73-3) ¶¶ 8-13.)   The Settlement

4  Administrator will also send notice via email.  (See id. ¶¶ 6-7.)

5  Further, the Settlement Administrator will establish a website

6  and toll-free phone number, which will be referred to in the mail

7  and email notices, to provide information about the settlement to

8  class members.  (See id. ¶¶ 14-15.)   The proposed notice

9  procedures appear "reasonably calculated, under all the

10  circumstances," to apprise all class members of the proposed

11  settlement.  See Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035,

12  1045-46 (9th Cir. 2019).

13     B.   Preliminary Settlement Approval

14          After determining that the proposed class satisfies the

15  requirements of Rule 23(a) and (b), the court must determine

16  whether the terms of the parties' settlement appear fair,

17  adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2); Hanlon,

18  150 F.3d at 1026.  This process requires the court to "balance a

19  number of factors," including "the strength of the plaintiff's

20  case; the risk, expense, complexity, and likely duration of

21  further litigation; the risk of maintaining class action status

22  throughout the trial; the amount offered in settlement; the

23  extent of discovery completed and the stage of the proceedings;

24  the experience and views of counsel; the presence of a

25  governmental participant; and the reaction of the class members

26  to the proposed settlement."  Hanlon, 150 F.3d at 1026.

27          Because some of these factors cannot be considered

28  until the final fairness hearing, at the preliminary approval

14

stage "the court need only determine whether the proposed

settlement is within the range of possible approval," <u>Murillo</u>,

266 F.R.D. at 479 (quoting <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 621

n.3 (7th Cir. 1982)), and resolve any "glaring deficiencies" in

the settlement agreement before authorizing notice to class

members, <u>Ontiveros</u>, 2014 WL 3057506, at *12 (citing <u>Murillo</u>, 266

F.R.D. at 478).  This generally requires consideration of

"whether the proposed settlement discloses grounds to doubt its

fairness or other obvious deficiencies, such as unduly

preferential treatment of class representatives or segments of

the class, or excessive compensation of attorneys." <u>Murillo</u>, 266

F.R.D. at 479 (quoting <u>West v. Circle K Stores, Inc.</u>, 04-cv-438

WBS GGH, 2006 WL 1652598, at *11-12 (E.D. Cal. June 13, 2006)).

        Courts often begin by examining the process that led to

the settlement's terms to ensure that those terms are "the result

of vigorous, arms-length bargaining" and then turn to the

substantive terms of the agreement.  <u>See, e.g.</u>, <u>Murillo</u>, 266

F.R.D. at 479-80; <u>Circle K</u>, 2006 WL 1652598, at *11-12; <u>In re</u>

<u>Tableware Antitrust Litig.</u>, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

2007) ("[P]reliminary approval of a settlement has both a

procedural and a substantive component.").

        1.    <u>Negotiation of the Settlement Agreement</u>

        This action was filed in 2022.  (Docket No. 1.)  The

court disposed of NCAA's motions to dismiss and transfer venue in

2023.  (Docket No. 29.)  The parties attempted mediation in

summer 2024 but were unsuccessful in reaching a settlement at

that time.  (Broshuis Decl. ¶ 11.)  Following extensive

discovery, including several discovery motions (Docket Nos. 49-

50), and complex briefing on plaintiffs' motion for class

certification (see Docket Nos. 63-67), the parties engaged in

settlement discussions and reached a settlement in January 2025.

(See Broshuis Decl. ¶¶ 6-11.)  Given the extensive discovery and

litigation conducted prior to settlement and counsel's

representation that the settlement was the product of arms-length

bargaining, the court at this stage does not question that the

proposed settlement is the result of informed and non-collusive

negotiations between the parties.

However, at final approval, counsel should provide

additional information concerning the settlement discussions to

allow the court to fully evaluate whether there are signs of

collusion.  Counsel should state whether the negotiations were

conducted with a mediator, and if so, provide the qualifications

of that mediator; state how long negotiations lasted prior to

settlement; and provide any other information counsel finds

relevant to the court's determination.

2.  <u>Amount Recovered and Distribution</u>

In determining whether a settlement agreement is

substantively fair to the class, the court must balance the value

of expected recovery against the value of the settlement offer.

See <u>Tableware</u>, 484 F. Supp. 2d at 1080.  This inquiry may involve

consideration of the uncertainty class members would face if the

case were litigated to trial.  See <u>Ontiveros</u>, 2014 WL 3057506, at

*14.

"In determining whether the amount offered in

settlement is fair, the Ninth Circuit has suggested that the

Court compare the settlement amount to the parties' 'estimates of

16

1  the maximum amount of damages recoverable in a successful

2  litigation.'" Litty v. Merrill Lynch & Co., No. 14-cv-0425 PA

3  PJW, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting In

4  re: Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir.

5  2000)); see also Almanzar v. Home Depot U.S.A., Inc., No. 2:20-

6  cv-0699 KJN, 2022 WL 2817435, at *11 (E.D. Cal. July 19, 2022)

7  (citing Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964 (9th Cir.

8  2009)) ("In determining whether the amount offered is fair and

9  reasonable, courts compare the proposed settlement to the best

10 possible outcome for the class.")

11        Plaintiffs' expert has calculated the total damages

12 suffered by class members to be $49,790,000. (Rascher Decl.

13 (Docket No. 73-2) ¶ 9.) The portion of the settlement allocated

14 to class member payments -- $32,794,850 -- constitutes

15 approximately 65.87% of the maximum valuation. This represents a

16 strong result for the class and is comfortably within the range

17 of percentage recoveries that California courts have found to be

18 reasonable. See Cavazos v. Salas Concrete, Inc., No. 1:19-cv-

19 00062 DAD EPG, 2022 WL 2918361, at *6 (E.D. Cal. July 25, 2022)

20 (collecting cases). Based on these figures, the average payment

21 per class member is $32,794.85. This five-figure payout also

22 represents a strong result for the class.

23        Plaintiffs faced numerous risks in this complex

24 antitrust litigation, including proving all elements of the

25 claims, obtaining and maintaining class certification,

26 establishing liability, and the costliness of litigation and

27 potential appeals on these issues. In light of the risks

28 associated with further litigation and the strength of the

settlement terms, the court finds that the value of the
settlement is within the range of possible approval such that
preliminary approval of the settlement is appropriate.  The court
further finds the method of processing class member claims to be
adequate, as each class member's share of the settlement will be
calculated on an individual basis by plaintiffs' expert based on
factors including employer and length of employment.

Counsel are cautioned that because this settlement was
reached prior to class certification, it will be subject to
heightened scrutiny for purposes of final approval.  See In re
Apple Inc. Device Performance Litig., 50 F.4th 769, 783 (9th Cir.
2022).  The recommendations of plaintiffs' counsel will not be
given a presumption of reasonableness, but rather will be subject
to close review.  See id.  The court will particularly scrutinize
"any subtle signs that class counsel have allowed pursuit of
their own self-interests to infect the negotiations."  See id. at
782 (quoting Roes, 944 F.3d at 1043).

### 3.  Attorney's Fees

If a negotiated class action settlement includes an
award of attorney's fees, that fee award must be evaluated in the
overall context of the settlement.  Knisley v. Network Assocs.,
312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy
Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).
The court "ha[s] an independent obligation to ensure that the
award, like the settlement itself, is reasonable, even if the
parties have already agreed to an amount."  In re Bluetooth
Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The settlement agreement provides that plaintiffs'

1  counsel will seek fees in an amount not to exceed 33.33% of the

2  gross settlement amount.  As of the filing of the instant motion,

3  plaintiffs' counsel has incurred $14,775,000 in fees.  (See

4  Settlement Agreement ¶ 7.6; Broshuis Decl. ¶ 18.)  In deciding

5  the attorney's fees motion, the court will have the opportunity

6  to assess whether the requested fee award is reasonable by

7  multiplying a reasonable hourly rate by the number of hours

8  counsel reasonably expended.  See Van Gerwen v. Gurantee Mut.

9  Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  As part of this

10  lodestar calculation, the court may consider factors such as the

11  "degree of success" or "results obtained" by plaintiffs' counsel.

12  See Cunningham v. Cnty. of L.A., 879 F.2d 481, 488 (9th Cir.

13  1988).  If the court, in ruling on the fees motion, finds that

14  the amount of the settlement warrants a fee award at a rate lower

15  than what plaintiffs' counsel requests, then it will reduce the

16  award accordingly.  The court will therefore not evaluate the fee

17  award here in considering whether the settlement is adequate.

18       IT IS THEREFORE ORDERED that plaintiffs' motion for

19  preliminary certification of a conditional settlement class and

20  preliminary approval of the class action settlement (Docket No.

21  73) be, and the same hereby is, GRANTED.

22       IT IS FURTHER ORDERED THAT:

23     (1) the following class be provisionally certified for the

24  purpose of settlement:

25            (a) All persons who, pursuant to NCAA Division I Bylaw

26            11.7.6, served as a "volunteer coach" in college

27            baseball at an NCAA Division I school from November 29,

28            2018 to July 1, 2023;

1    (2) the proposed settlement is preliminarily approved as

2  fair, just, reasonable, and adequate to the members of the

3  settlement class, subject to further consideration at the final

4  fairness hearing after distribution of notice to members of the

5  settlement class;

6    (3) for purposes of carrying out the terms of the settlement

7  only:

8         (a) Taylor Smart and Michael Hacker are appointed as

9         the representatives of the settlement class and are

10        provisionally found to be adequate representatives

11        within the meaning of Federal Rule of Civil Procedure

12        23;

13        (b) the law firm of Korein Tillery, LLC is

14        provisionally found to be a fair and adequate

15        representative of the settlement class and is appointed

16        as class counsel for the purposes of representing the

17        settlement class conditionally certified in this Order;

18    (4) Kroll Settlement Administration LLC is appointed as the

19  Settlement Administrator;

20    (5) the form and content of the proposed Notices of Class

21  Action Settlement (Docket No. 73-3 at 8-22) are approved, except

22  to the extent that they must be updated to reflect the dates and

23  deadlines specified in this Order and other information such as

24  website addresses and phone numbers;

25    (6) no later than seven (7) calendar days from the date this

26  Order is signed, counsel shall provide the Settlement

27  Administrator with the class members' names, physical mailing

28  addresses, telephone numbers, email addresses, and any other

information pertinent to the administration of the Settlement, if they have not done so already;

(7) no later than fourteen (14) calendar days from the date this Order is signed, the Settlement Administrator shall send a Notice of Class Action Settlement to all members of the settlement class via first class mail and email.  If a Notice is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator will re-send the Notice to the forwarding address.  If no forwarding address is provided, the Settlement Administrator will attempt to locate a more current address within three (3) business days of receipt of the returned mail;

(8) no later than sixty (60) days from the date Settlement Administrator mails the Notice of Class Action Settlement, though in the case of a re-mailed notice the deadline will be extended by fifteen (15) days, any member of the settlement class who intends to object to, comment upon, or opt out of the settlement shall provide written notice of that intent pursuant to the instructions in the Notice of Class Action Settlement;

(9) A final fairness hearing shall be set to occur before this Court on **September 15, 2025** at 1:30 p.m. in Courtroom 5 of the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California, to determine whether the proposed settlement is fair, reasonable, and adequate and should be approved by this court; whether the settlement class's claims should be dismissed with prejudice and judgment entered upon final approval of the settlement; whether final class certification is appropriate; and to consider class counsel's

21

applications for attorney's fees, costs, and incentive awards for the class representatives. The court may continue the final fairness hearing without further notice to the members of the class;

(10) no later than thirty-five (35) days before the final fairness hearing, class counsel shall file with this court a petition for an award of attorney's fees and costs. Any objections or responses to the petition shall be filed no later than twenty-one (21) days before the final fairness hearing. Class counsel may file a reply to any objections no later than fourteen (14) days before the final fairness hearing;

(11) no later than thirty-five (35) days before the final fairness hearing, class counsel shall file and serve upon the court and defendant's counsel all papers in support of the settlement, the incentive awards for the class representatives, and any award for attorney's fees and costs;

(12) no later than thirty-five (35) days before the final fairness hearing, the Settlement Administrator shall prepare, and class counsel shall file and serve upon the court and defendant's counsel, a declaration setting forth the services rendered, proof of mailing, a list of all class members who have opted out of the settlement, and a list of all class members who have commented upon or objected to the settlement;

(13) any person who has standing to object to the terms of the proposed settlement may appear at the final fairness hearing (themselves or through counsel) and be heard to the extent allowed by the court in support of, or in opposition to, (a) the fairness, reasonableness, and adequacy of the proposed

settlement, (b) the requested award of attorney's fees,
reimbursement of costs, and incentive award to the class
representative, and/or (c) the propriety of class certification.
To be heard in opposition at the final fairness hearing, a person
must, no later than sixty (60) days from the date the Settlement
Administrator mails the Notice of Class Action Settlement, (a)
serve by hand or through the mails written notice of his or her
intention to appear, stating the name and case number of this
action and each objection and the basis therefore, together with
copies of any papers and briefs, upon class counsel and counsel
for defendant, and (b) file said appearance, objections, papers,
and briefs with the court, together with proof of service of all
such documents upon counsel for the parties.

Responses to any such objections shall be served by
hand or through the mails on the objectors, or on the objector's
counsel if there is any, and filed with the court no later than
fourteen (14) calendar days before the final fairness hearing.
Objectors may file optional replies no later than seven (7)
calendar days before the final fairness hearing in the same
manner described above.  Any settlement class member who does not
make his or her objection in the manner provided herein shall be
deemed to have waived such objection and shall forever be
foreclosed from objecting to the fairness or adequacy of the
proposed settlement, the judgment entered, and the award of
attorney's fees, costs, and incentive awards to the class
representatives unless otherwise ordered by the court;

(14) pending final determination of whether the settlement
should be ultimately approved, the court preliminarily enjoins

all class members (unless and until the class member has

submitted a timely and valid request for exclusion) from filing

or prosecuting any claims, suits, or administrative proceedings

regarding claims to be released by the settlement.

Dated:  April 30, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

24