1 STEPHEN M. TILLERY *(pro hac vice)*
        stillery@koreintillery.com
2 STEVEN M. BEREZNEY (Bar No. 329923)
        sberezney@koreintillery.com
3 GARRETT R. BROSHUIS (Bar No. 329924)
        gbroshuis@koreintillery.com
4 **KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
5 St. Louis, MO 63101
Telephone: (314) 241-4844
6 Facsimile: (314) 241-3525

7 Attorneys for Plaintiffs Taylor Smart and
Michael Hacker, Individually and on Behalf
8 of All Those Similarly Situated

9

10                  **UNITED STATES DISTRICT COURT**

11          **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| 12 TAYLOR SMART AND MICHAEL HACKER, Individually and on Behalf of | CASE NO. 2:22-cv-02125-WBS-CSK |
| 13 All Those Similarly Situated, | **CLASS ACTION** |
| 14            Plaintiffs, | **PLAINTIFFS' MOTION FOR** |
| | **ATTORNEYS' FEES AND LITIGATION** |
| 15      vs. | **COSTS; MEMORANDUM IN SUPPORT** |
| 16 NATIONAL COLLEGIATE ATHLETIC | Date:  September 15, 2025 |
| ASSOCIATION, an unincorporated | Time:  1:30 p.m. |
| 17 association; | Courtroom: 5, 14th Floor |
| 18            Defendant. | Judge:  The Honorable William B. Shubb |
| 19 | |

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR**

**ATTORNEYS' FEES AND LITIGATION COSTS**

Please take notice that, on September 15, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of this Court, located at 501 I Street, Sacramento, California, Plaintiffs Taylor Smart and Michael Hacker ("Plaintiffs") will, and hereby do, move for an award of attorneys' fees and litigation costs. This Motion is made pursuant to Federal Rules of Civil Procedure 23(h) and 54(d). This Motion is based upon this Notice of Motion and the accompanying Memorandum in Support; the Declaration of Garrett Broshuis ("Broshuis Fee Decl."); the records on file in this action; and upon additional argument as may be presented at or before the hearing on this Motion.

DATED: July 2, 2025          Respectfully submitted,


                                    /s/ *Garrett R. Broshuis*
                                    KOREIN TILLERY, LLC
                                    Stephen M. Tillery (*pro hac vice*)
                                    Steven M. Berezney
                                    Garrett R. Broshuis

                                    *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND
LITIGATION COSTS...............................................i

Introduction...................................................1

Factual and Procedural Background..............................2

Legal Standard.................................................3

Argument.......................................................4

  I.  The Court Should Use the Percentage-of-the-Fund Method
      and Award 30% in Attorneys' Fees. .........................4

     A. The results achieved support the fee request. ......... 5

     B. Class Counsel undertook significant risk, which
        supports the fee request. ........................... 8

     C. The contingent nature of the fee supports the fee
        request. ........................................... 10

     D. Class Counsel's significant efforts, experience, and
        skill support the fee request. ...................... 11

     E. Awards in similar cases support the fee request. ..... 15

 II. A Lodestar Cross-Check Confirms that the Proposed Fee
     Is Reasonable. ...........................................18

III. The Request for Reimbursement of Litigation Expenses
     Should Be Approved. .....................................22

CONCLUSION....................................................23

**Motion for Attorneys' Fees and Litigation Costs**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Andrews v. Plains All Am. Pipline, L.P.*,
    No. CV 15-4113, 2022 WL 4453864 (C.D. Cal. Sept. 20,
    2022) .................................................18

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617, 2018 WL 3960068 (N.D. Cal. Aug. 8,
    2018) ..............................................6

*In re Bluetooth*,
    654 F.3d at 941 ...................................4, 5, 22

*In re Capacitors Antitrust Litig.*,
    No. 3:14-cv-03264, 2023 WL 2396782 (N.D. Cal. Mar. 6,
    2023) .................................................17

*Carlin v. DairyAmerica, Inc.*,
    380 F. Supp. 3d 998 (E.D. Cal. 2019) ...................*passim*

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
    MDL No. 1917, 2015 WL 9266493 (N.D. Cal. Dec. 17,
    2015) ..............................................6, 13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. C-07-5944, 2016 WL 183285 (N.D. Cal. Jan. 14,
    2016) .................................................17

*In re College Athlete NIL Litig.*,
    No. 4:20-cv-03919-CW (N.D. Cal. Apr. 7, 2025) ...............20

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ...........................6

*In re Endosurgical Prods. Direct Purchaser Antitrust
    Litig.*,
    No. SACV 05-8809, 2008 WL 11504857 (C.D. Cal. Dec.
    31, 2008) .................................................8

*Evans v. Zions Bancorporation, N.A.*,
    No. 2:17-cv-01123, 2022 WL 16815301 (E.D. Cal. Nov.
    8, 2022) ...............................................8, 15

*In re General Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ........................6

*Griffin v. Consol. Commc's*,
    No. 2:21-cv-0885, 2023 WL 3853643 (E.D. Cal. June 6,
    2023) ...............................................15, 22

*In re Heritage Bond Litig.*,
    No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10,
    2005) .......................................................6

*In re High-Tech Employee Antitrust Litig.*,
    No. 11-cv02509, 2015 WL 5159441 (N.D. Cal. Sept. 2,
    2015) .......................................................6

*Kabasele v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
    No. 2:21-cv-1639, 2024 WL 477221 (E.D. Cal. Feb. 7,
    2024) ..................................................*passim*

*Kang v. Wells Fargo Bank, N.A.*,
    No. 17-CV-06220-BLF, 2021 WL 5826230 (N.D. Cal. Dec.
    8, 2021) ...................................................21

*Kimbo v. MXD Group, Inc.*,
    No. 2:19-cv-00166, 2021 WL 492493 (E.D. Cal. Feb. 10,
    2021) ...............................................8, 20, 21

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
    No. CV 07-05107 SJO AGRX, 2013 WL 7985367(C.D. Cal.
    Dec. 23, 2013) ...........................................4, 5

*In re Lidoderm Antitrust Litig.*,
    MDL No. 2521, 2018 WL 4620695 (N.D. Cal. Sept. 20,
    2018) .................................................17, 21

*In re Linerboard Antitrust Litig.*,
    MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .......17

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10,
    2020) .....................................................17

*Martinelli v. Johnson & Johnson*,
    No. 2:15-cv-01733, 2022 WL 4123874 (E.D. Cal. Sept.
    9, 2022) ...................................................9

*Meijer, Inc. v. Abbott Labs.*,
    No. C 07-5985, 2011 WL 13392313 (N.D. Cal. Aug. 11,
    2011) .....................................................16

*Mejia v. Walgreen Co.*,
    No. 2:19-cv-00218, 2021 WL 1122390 (E.D. Cal. Mar.
    24, 2021) ..........................................11, 21

*MHC Fin., Ltd v. City of San Rafael*,
    No. C 00-3785 VRW, 2009 WL 10696045 (N.D. Cal. Apr.
    17, 2009) .................................................19

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-
    in-Aid Cap Antitrust Litig.*,
    No. 14-MD-02541-CW (NC), 2019 WL 12194763 (N.D. Cal.
    Dec. 6, 2019) ...........................................20

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-
    in-Aid Cap Antitrust Litig.*,
    No. 4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec.
    6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019)...........21

*One Co., Inc. v. S.K. Foods, L.P.*,
    No. 2:08-cv-3017, 2014 WL 4078232 (E.D. Cal. Aug. 18,
    2014) .....................................................6

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) .......................19, 20

*Park v. Carlyle/Galaxy San Pedro, L.P.*,
    No. CV 09-00793, 2009 WL 10669742 (C.D. Cal. Oct. 8,
    2009) .....................................................8

*In re Polyurethane Foam Antitrust Litig.*,
    No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26,
    2015) ....................................................17

*Senne v. The Office of the Comm'r of Baseball*,
    No. 14-CV-00608-JCS (N.D. Cal.) ..........................12

*In re Static Random Access Memory (SRAM) Antitrust
    Litig.*,
    No. 07-md-1819 (N.D. Cal. Oct. 14, 2011) .................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827, 2013 WL 1365900 (N.D. Cal. Apr. 3,
    2013) ....................................................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827, 2013 WL 149692 (N.D. Cal. Jan. 14,
    2013) ....................................................16

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
   No. C 07-05634, 2015 WL 3396829 (N.D. Cal. May 26,
   2015) ..................................................16

*In re Urethane Antitrust Litig.*,
   MDL No. 1616, 2016 WL 4060156 (D. Kan. July 29, 2016) .......17

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ...........................16

*In re Vitamins Antitrust Litig.*,
   MDL No. 1285, 2001 WL 34312839 (D.D.C. July 16, 2001) .......18

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..........................*passim*

*In re Warner Commc's Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35
   (2d Cir. 1986) ...........................................10

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ..............................10

**Court Rules**

Fed. R. Civ. P. 23(h).......................................3

**Other Authorities**

Connor & Lande, *Not Treble Damages: Cartel Recoveries
   are Mostly Less than Single Damages*, 100 IOWA L. REV.
   1997, 1998 (2015) ..........................................6

Lande & Davis, *Benefits from Private Antitrust
   Enforcement: An Analysis of Forty Cases*, 42 U.S.F. L.
   REV. 879, 911 tbl. 7A (2008).................................16

1

## Introduction

2      The Ninth Circuit benchmark for attorneys' fees is 25% of

3   the common fund under ordinary circumstances. This settlement of

4   a complex antitrust case is not an ordinary one. Plaintiffs began

5   from a blank slate here. The NCAA's volunteer coach bylaw had

6   existed since 1992, and no coach had challenged the bylaw until

7   Plaintiffs and their counsel filed this lawsuit. That was likely

8   because of the great risk and expense that litigating an

9   antitrust lawsuit against an entity such as the NCAA entails.

10      Yet after this case was filed, the NCAA abolished the bylaw

11   for all sports, a change that benefits hundreds of baseball

12   coaches and hundreds more coaches in other sports. And after most

13   of discovery was completed, the NCAA agreed to pay over 90% of

14   class members' alleged damages. On average, class members will

15   receive close to $36,000 *per year* that they coached in the

16   volunteer role. Many class members will receive much more.

17      Class Counsel achieved this extraordinary result by

18   diligently and skillfully building a case that positioned the

19   class for success as the litigation advanced. They did so on a

20   contingency fee basis in a highly complex area of the law. They

21   also faced risks, including establishing liability, getting a

22   class certified, defeating a *Daubert* motion, defeating summary

23   judgment, prevailing at trial, and defeating an appeal. This was

24   all against a well-financed behemoth represented by a highly

25   respected law firm.

26      These great results in the face of those risks should lead

27   to a fair and reasonable fee of 30% of the common fund (totaling

28

**Motion for Attorneys' Fees and Litigation Costs**

1  $14,775,000). This amount is above the "ordinary" benchmark but

2  still below rates often approved in antitrust class action cases

3  with less impressive results. A lodestar cross-check confirms the

4  reasonableness of this fee request. Class Counsel expended over

5  8,000 hours on the case, resulting in a lodestar of over $5.9

6  million. A 30% fee would yield a multiplier of 2.5, well within

7  what courts have deemed reasonable.

8      Class Counsel also requests reimbursement of $1,377,052.39

9  in litigation expenses. These expenses were reasonably and

10 necessarily incurred in the prosecution of this case, and are

11 below the costs often incurred in complex antitrust cases.

12     The Court should grant this motion for attorneys' fees and

13 litigation costs.

14                    **Factual and Procedural Background**

15     Plaintiffs previously summarized this case's factual and

16 procedural background when moving for preliminary approval. (ECF

17 No. 73 at 3-7.) Much of that discussion applies equally here and

18 will not be repeated.

19     As detailed on pp. 11-15, *infra*, Class Counsel invested

20 substantial time and money in the prosecution of this case,

21 including investigating background facts, drafting pleadings,

22 defeating a dispositive motion, conducting considerable discovery

23 (including third-party discovery obtained by issuing over 300

24 subpoenas), moving for class certification, and negotiating a

25 settlement. *See generally* Broshuis Fee Decl. at ¶¶ 4-44.

26     The NCAA ultimately agreed to pay $49.25 million into a

27 common settlement fund from which class members will be paid

28

1  after deduction of court-approved attorneys' fees, costs,

2  expenses, and incentive awards.[1] The Settlement Agreement allows

3  Class Counsel to petition for up to 33.33% of the maximum

4  settlement amount as attorneys' fees. But Class Counsel seeks

5  only a 30% fee, along with expended costs. When granting

6  preliminary approval, the Court ordered Plaintiffs to file this

7  motion no later than 35 days before the September 15, 2025 final

8  fairness hearing. (ECF No. 80 at 22.) For the sake of

9  transparency, Plaintiffs are filing this motion much earlier,

10 before the class notice period expires.

11                          **Legal Standard**

12      Rule 23(h) provides, "[i]n a certified class action, the

13 court may award reasonable attorney's fee and nontaxable costs

14 that are authorized by law or by the parties' agreement." Fed. R.

15 Civ. P. 23(h). "If a negotiated class action settlement includes

16 an award of attorney's fees, that fee award must be evaluated in

17 the overall context of the settlement." *Kabasele v. Ulta Salon,*

18 *Cosmetics & Fragrance, Inc.*, No. 2:21-cv-1639, 2024 WL 477221, at

19 *6 (E.D. Cal. Feb. 7, 2024) (Shubb, J.) (citing *Knisely v.*

20 *Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002)). "Under the

21 'common fund' doctrine, a litigant or a lawyer who recovers a

22 common fund for the benefit of persons other than himself or his

23 client is entitled to a reasonable attorneys' fee from the fund

24 as a whole." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 969

25 (9th Cir. 2003)). "In common fund cases, the district court has

26

[1] *See* Settlement Agreement § 5.1.1. The Settlement Agreement was
27 filed under seal at ECF No. 75. The redacted version is filed at
ECF No. 73-1, Exhibit 2.

28

**Motion for Attorneys' Fees and Litigation Costs**

1   discretion to determine the amount of attorneys' fees to be drawn

2   from the fund by employing either the percentage method or the

3   lodestar method. The court may also use one method as a 'cross-

4   check' upon the other method." *Id.* (citations omitted).

5       The lodestar method is typically used in cases where the

6   relief sought is "often primarily injunctive in nature and thus

7   not easily monetized." *In re Bluetooth*, 654 F.3d at 941. In a

8   common fund case where the benefit can be quantified, like this

9   one, courts regularly use the percentage-of-the-fund method "in

10   lieu of the often more time-consuming task of calculating the

11   lodestar." *Id.* "The use of the percentage-of-the-fund method in

12   common-fund cases is the prevailing practice in the Ninth Circuit

13   for awarding attorneys' fees and permits the Court to focus on

14   showing that a fund conferring benefits on a class was created

15   through the efforts of plaintiffs' counsel." *In re Korean Air*

16   *Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013

17   WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013).

18                                **Argument**

19   **I.   The Court Should Use the Percentage-of-the-Fund Method and**

20       **Award 30% in Attorneys' Fees.**

21       This settlement results in a true common fund: a

22   quantifiable sum of money that will be distributed to class

23   members. While Plaintiffs originally requested injunctive relief,

24   that was essentially mooted by the NCAA's decision to repeal the

25   volunteer coach rule after Plaintiffs filed this case. With a

26   common fund at issue, the Court should follow the "prevailing

27

28

**Motion for Attorneys' Fees and Litigation Costs**

1  practice" and use the percentage-of-the-fund method. *In re Korean*
2  *Air*, 2013 WL 7985367 at *1.

3      Using that method, the Court should award Class Counsel a
4  30% fee. As in *Kabasele*, the Settlement Agreement here provides
5  that Class Counsel may seek a fee award not to exceed 33.33% of
6  the gross settlement amount, and the Settlement Agreement is
7  effective even if the Court does not award that amount. *Kabasele*,
8  2024 WL 477221, at *5; *see also* Settlement Agreement, ECF No. 75,
9  at § 7.8.4. Yet Class Counsel requests a lesser 30% of the common
10  fund. While 25% is the benchmark for fees in the Ninth Circuit
11  where a settlement produces a common fund, *In re Bluetooth*, 654
12  F.3d at 943, a higher rate may be awarded when merited, *Vizcaino*
13  *v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). "[T]he
14  25% benchmark can be adjusted depending on: (1) the result
15  obtained; (2) the risk involved in the litigation; (3) the
16  contingent nature of the fee; (4) counsel's efforts, experience,
17  and skill; and (5) awards made in similar cases." *Carlin v.*
18  *DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1019 (E.D. Cal. 2019)
19  (Ishii, J.) (citing *Vizcaino*, 290 F.3d at 1048-50). These factors
20  all support a 30% fee here.

21      **A.    The results achieved support the fee request.**

22      "[T]he degree of success obtained is the most critical
23  factor" in determining whether to exceed the 25% benchmark.
24  *Carlin*, 380 F. Supp. 3d at 1019-20. The $49.25 million settlement
25  amount that Class Counsel successfully negotiated *pre*-class
26  certification is remarkable. It is quite rare to achieve close to
27  100% of alleged damages in an antitrust class action. The corpus

28

1  of antitrust law is dominated by cases that settled for 20 or 30

2  cents on the dollar — and often times much less.[2] According to one

3  study of antitrust settlements, the average settlement amounts to

4  37% of alleged damages.[3] But this settlement makes the class

5  members nearly whole, achieving between 91% and 99% of actual

6  damages. *See* ECF No. 73 at 35-36 and supporting materials

7  (detailing the percentage). That Plaintiffs achieved this before

8  class certification makes the result even more remarkable, and

9  speaks to Class Counsel's skills in developing a compelling

10  evidentiary record.

11      Courts have repeatedly exceeded the 25% benchmark when

12  presented with less impressive results. In *Carlin*, a recovery of

13  48% of estimated damages was deemed "exceptional," and led to a

14  33% fee award. *Carlin*, 380 F. Supp. 3d at 1023; *see also In re*

15  *Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617, 2018 WL

16  3960068, at *9-*10 (N.D. Cal. Aug. 8, 2018) (holding that 14.5%

17  recovery justified 27% fee); *In re Heritage Bond Litig.*, No. 02-

18  ML-1475, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)

19  ("exceptional" 36% recovery justified a 33.33% fee).[4] If

20  ─────────────────

[2] *See, e.g.*, *One Co., Inc. v. S.K. Foods, L.P.*, No. 2:08-cv-3017,
21  2014 WL 4078232, at *9 (E.D. Cal. Aug. 18, 2014) (Mueller, J.)
(final approval: 2.4% of damages); *In re Cathode Ray Tube (Crt)*
22  *Antitrust Litig.*, MDL No. 1917, 2015 WL 9266493, at *5-*6 (N.D.
Cal. Dec. 17, 2015) (final approval: 0.4875% of damages); *In re*
23  *High-Tech Employee Antitrust Litig.*, No. 11-cv02509, 2015 WL
5159441, at *4 (N.D. Cal. Sept. 2, 2015) (final approval: 14% of
24  single damages estimate).

25  [3] Connor & Lande, *Not Treble Damages: Cartel Recoveries are Mostly*
26  *Less than Single Damages*, 100 IOWA L. REV. 1997, 1998 (2015).

27  [4]  *See also In re General Instrument Sec. Litig.*, 209 F. Supp. 2d
423, 431, 434 (E.D. Pa. 2001) (11% recovery justified 33.33%
28  fee); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 323, 327

recoveries that type of recovery is "exceptional," then the results here are extraordinary.

For further support of the fee request, it is worth repeating that the NCAA did not abolish the volunteer coach rule until a few months after Plaintiffs filed this case (which still requested injunctive relief at the time). The rule had become a fixture in the NCAA's manual for three decades, and prior repeal efforts had failed before this lawsuit was filed. While Plaintiffs do not seek any fees based on the future value of the rule change to class members, that rule change indeed has great value to the hundreds of class members still coaching. In just the first year after the NCAA repealed the bylaw, over half of member schools immediately converted the wage-fixed, unpaid position into a paid one for baseball, with an average salary of close to $50,000. ECF No. 64-2 at ¶ 23. Coaches can now also receive traditional employment benefits, like health insurance. While such benefits are difficult to fully quantify, they are still relevant to the inquiry. *See Vizcaino*, 290 F.3d at 1049 ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance.").

Even putting the rule change aside, though, the first factor strongly supports the 30% fee request because the common fund far exceeds the typical result in an antitrust class action.

---

(E.D.N.Y. 1993) (10% recovery justified a 33.8% fee).

**B.    Class Counsel undertook significant risk, which supports the fee request.**

A 30% award of the common fund is also reasonable in light of the significant risks Class Counsel took on. Numerous courts have recognized that "antitrust class actions are notoriously complex, protracted, and bitterly fought." *Park v. Carlyle/Galaxy San Pedro, L.P.*, No. CV 09-00793, 2009 WL 10669742, at *6 (C.D. Cal. Oct. 8, 2009); *In re Endosurgical Prods. Direct Purchaser Antitrust Litig.*, No. SACV 05-8809, 2008 WL 11504857, at *7 (C.D. Cal. Dec. 31, 2008) (quotations omitted). That risk magnifies when the defendant is a well-known, powerful association represented by experienced attorneys. *Carlin*, 380 F. Supp. 3d at 1020 ("vigorous opposition of claims" by skilled opposing counsel in "complex litigation with unresolved legal issues" supported increased fee award) (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 810ML02151JVSFMOX, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2013)).

Plaintiffs faced risks at nearly every stage of the litigation. The NCAA vigorously contested Plaintiffs' motion for class certification, so certification was not certain, and if appealed, would have caused additional expense, risk, and delay. *Evans v. Zions Bancorporation, N.A.*, No. 2:17-cv-01123, 2022 WL 16815301, at *7 (E.D. Cal. Nov. 8, 2022) (Shubb, J.) (citing similar factors in risk analysis); *Kimbo v. MXD Group, Inc.*, No. 2:19-cv-00166, 2021 WL 492493, at *5 (E.D. Cal. Feb. 10, 2021) (Shubb, J.) (same).

The NCAA also had asserted three procompetitive justifications for the volunteer coach rule that it intended to raise at summary judgment and trial: preserving competition between members, increasing coaching resources available to student athletes, and expanding coaching opportunities for prospective coaches. (ECF No. 63-10 at p. 20.) While Plaintiffs are confident that they would have defeated these justifications, the entire class would have recovered nothing had the NCAA nevertheless prevailed on any one of them.

Plaintiffs likewise had to navigate the mine field of complex expert analyses, which is always a risk in antitrust cases — more so than in the average case. To meet that challenge, Plaintiffs retained the top sports economist in the field and submitted an incredibly strong expert analysis tailored to the needs of the case. Yet the NCAA still attacked the expert model in a *Daubert* motion at the class certification stage and presumably would have raised the same arguments at summary judgment and trial. Plaintiffs again do not believe that the NCAA's attacks would have persuaded either the Court or a jury. But it was another risk that Class Counsel took on when agreeing to litigate this case on a contingency basis. *See Martinelli v. Johnson & Johnson*, No. 2:15-cv-01733, 2022 WL 4123874, at *4 (E.D. Cal. Sept. 9, 2022) ("[B]oth sides have retained expert witnesses, which, should this case go to trial, makes it virtually impossible to predict with any certainty which

**Motion for Attorneys' Fees and Litigation Costs**

1  testimony would be credited, and ultimately, which expert version
2  would be accepted by the jury.") (England, Jr., J.).[5]

3      And, as the Court acknowledged when it preliminarily
4  approved the settlement, Class Counsel also faced financial and
5  appellate risk. ECF No. 80 at 17.

6      In short, Class Counsel undertook significant risks and
7  successfully litigated a case that had never been brought since
8  the volunteer coach rule was enacted in 1992. That strongly
9  supports the fee request here.

10     **C.   The contingent nature of the fee supports the fee
            request.**

12     These risks are particularly acute for Class Counsel's firm,
13  which primarily litigates cases on a contingency basis, litigated
    this case on a contingent basis, and self-funded this case.
14  Broshuis Fee Decl. at ¶ 47.

15     Fee orders should "reward attorneys for taking the risk of
16  non-payment by paying them a premium over their normal hourly
17  rates for winning contingency cases," which "assur[es] competent
18  representation for plaintiffs who could not afford to pay on an
19  hourly basis." *In re Washington Pub. Power Supply Sys. Sec.*
20  *Litig.*, 19 F.3d 1291, 1299-300 (9th Cir. 1994).  This Court has
21  noted that "[t]he nature of contingency work inherently carries

---

5   *See also In re Warner Commc's Sec. Litig.*, 618 F. Supp. 735,
744-45 (S.D.N.Y. 1985) ("Undoubtedly, expert testimony would be
needed to fix not only the amount, but the existence of actual
damages. In this 'battle of experts,' it is virtually impossible
to predict with any certainty which testimony would be credited,
and ultimately, which damages would be found to have been caused
by actionable, rather than the myriad nonactionable factors . . .
.") (citation omitted), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

risks that counsel will sometimes recover very little to nothing at all, even for cases that may be meritorious. Where counsel do succeed in vindicating statutory and employment rights on behalf of a class of employees, they depend on recovering a reasonable percentage-of-the-fund fee award to enable them to take on similar risks in future cases." *Mejia v. Walgreen Co.*, No. 2:19-cv-00218, 2021 WL 1122390, at *8 (E.D. Cal. Mar. 24, 2021) (Shubb, J.) (citing *Kimbo*, 2021 WL 492493, at *7 (Shubb, J.)). As another court in this district has observed, "[a] higher-than-benchmark award exists to reward counsel for investing 'substantial time, effort, and money, especially in light of the risks of recovering nothing.'" *Carlin*, 380 F. Supp. 3d at 1021 (quoting *In re Washington*, 19 F.3d at 1299-300).

For several years, Class Counsel expended thousands of hours in professional time and fronted over a million dollars in costs in a novel case that presented many risks of nonpayment. They should be fairly compensated for their significant risks, especially because devoting resources to this case meant that Class Counsel declined other potentially remunerative work. *Vizcaino*, 290 F.3d at 1050 (contingency agreement "required counsel to forgo significant other work," which supported enhanced fee award). This factor supports the fee request.

**D. Class Counsel's significant efforts, experience, and skill support the fee request.**

"[I]f Counsel has represented intimate knowledge of the case, and applied their unique skills to obtain favorable results, this factor should weigh in favor of an increase in the benchmark rate." *Carlin*, 380 F. Supp. 3d at 1021. That applies

1   here, where Class Counsel indeed had intimate knowledge of the

2   industry and unique skills perfectly suited for the case. The

3   undersigned previously worked as a Division I baseball player and

4   was coached by a "volunteer" coach, and had close friends who

5   worked extensively in that coaching role. Broshuis Fee Decl. at ¶

6   5. And both of the lead members of the Class Counsel team have

7   extensive experience in complex litigation, including in

8   antitrust litigation and in high-profile sports-related

9   litigation.[6] That blend of industry knowledge and litigation

10  skills made Class Counsel uniquely suited to represent the class.

11      Through hard work, Class Counsel used these skills to

12  achieve a great result with the settlement. Class Counsel pursued

13  extensive discovery. After several rounds of meeting and

14  conferring over document requests and search terms, the NCAA

15  produced 278,132 pages of documents, which Class Counsel

16  reviewed. *See* Broshuis Fee Decl. at ¶ 19. To keep things

17  organized, Class Counsel created evidentiary summaries of this

18  document review. *Id.* After the Court denied a motion to compel,

19  ECF No. 55 at 11, Class Counsel issued over 300 subpoenas to the

20  NCAA's member schools to collect data related to the compensation

21  being paid to their baseball coaches, *see* Broshuis Fee Decl. at

22  ─────────────────

23  [6]  *See* Broshuis Fee Decl. at ¶ 39 (summarizing the experience and
    skills of Mr. Broshuis and Mr. Berezney). Indeed, Mr. Broshuis
    served as lead counsel in a case obtaining a landmark $185

24  million settlement on behalf of thousands of minor league
    baseball players that is believed to be one of the five largest

25  wage-and-hour settlements ever. *Senne v. The Office of the Comm'r
    of Baseball*, No. 14-CV-00608-JCS (N.D. Cal.). Meanwhile Mr.

26  Berezney was part of a team that achieved over $2 billion in
    antitrust settlements in a case involving the alleged rigging of

27  the foreign exchange market.

28
**Motion for Attorneys' Fees and Litigation Costs**

¶¶ 15-18. Obtaining and reviewing documents from over 300 member schools, along with handling the extensive third-party correspondence required to facilitate those productions, required a dogged effort – a Korein Tillery attorney spent much of the last year on the effort, and two paralegals spent significant time on the effort as well. *Id.* at ¶ 17. Those diligent efforts, however, proved critical to success, as the data gained from that third-party discovery formed the backbone of the expert damages analyses submitted at class certification.

Class Counsel also deposed several witnesses, which resulted in key admissions for the case. *See* Broshuis Fee Decl. at ¶¶ 24-25. In addition, Class Counsel defended depositions of both Mr. Smart and Mr. Hacker and attended the six depositions of the named plaintiffs in the related case of *Ray*. *Id.* ¶¶ 26-27. Before defending those depositions, Class Counsel collected, reviewed, and produced print and electronic documents for Plaintiffs, including e-mails and text messages. *Id.* ¶ 22. Mr. Smart produced 752 documents totaling 1,382 pages. *Id.* Mr. Hacker produced 129 documents totaling 351 pages. *Id.*

During this time, Class Counsel retained Dr. Daniel Rascher — the top sports economist for this line of work — as the class's expert witness. *Id.* ¶ 23. Class Counsel worked with Dr. Rascher and his team to ensure he had sufficient information to perform a reliable damages analysis, which he submitted in an expert declaration in support of Plaintiffs' motion for class certification.[7] Class Counsel then defended Dr. Rascher's

---

[7] ECF No. 64-2; *see also* Broshuis Fee Decl. at ¶¶ 28-29.

1  deposition and drafted a brief opposing the NCAA's motion to

2  exclude him under *Daubert*. *See* Broshuis Fee Decl. at ¶ 30.[8] Class

3  Counsel also deposed the NCAA's sole rebuttal expert, Dr. Jee-

4  Yeon Lehmann,[9] on January 23, 2025. *See* Broshuis Fee Decl. at ¶

5  30.

6      As the record was built, Class Counsel actively participated

7  in various settlement negotiations. The parties previously

8  attempted mediation with a mediator (Fouad Kurdi) in July 2024,

9  but were unsuccessful. Broshuis Fee Decl. at ¶ 24. In January,

10  2025, and after the evidentiary record had been built, the

11  parties resumed settlement discussions without a mediator. *Id.* at

12  ¶ 31. The parties had already traded expert reports and class

13  certification briefs, and so the amount at stake and the

14  parties' positions were well known. Informed by this material,

15  the parties exchanged positions, offers, and counteroffers

16  several times during arms-length negotiations. *Id.* The parties

17  reached an agreement on January 31, 2025 — the same day that

18  Plaintiffs' reply brief in support of their motion for class

19  certification and their *Daubert* opposition brief were due. *Id.*

20      Class Counsel then prepared and argued a motion for

21  preliminary approval of the settlement. Once that was granted,

22  ECF No. 80, Class Counsel worked with the settlement

23  administrator to finalize the class member contact list and then

24  notify the class of the settlement. *Id.* at ¶ 42. That work

25

26  [8] *See also* ECF No. 67. Plaintiffs did not file this opposition
    brief in light of the settlement.

27  [9] ECF No. 67-5.

28

continues: Class Counsel has been diligently fielding calls and emails from class members on a daily basis and has proactively worked to spread the word to as many class members as possible to ensure that the notice campaign is a success. *Id.* And Class Counsel plans to directly reach out to class members who do not fill out needed forms on the website so that class members who desire a payment actually receive it. *Id.*

In sum, Class Counsel industriously used their unique knowledge and strong litigation skills to build a compelling record, and this factor strongly supports the requested fee.

**E.    Awards in similar cases support the fee request.**

If the benchmark 25% fee is for a normal case, then by extension, an abnormal case should warrant more than the benchmark. Fee decisions in this Circuit bear that out. Although 25% is the starting point for the fee discussion, this Court has often exceeded the 25% benchmark rate:

- *Kabasele*, 2024 WL 477221, at *7 (Shubb, J.) (final approval order awarding 33.33% fee for settlement that was around 27.22% of potential damages);

- *Griffin v. Consol. Commc's*, No. 2:21-cv-0885, 2023 WL 3853643, at *5, *7 (E.D. Cal. June 6, 2023) (Shubb, J.) (final approval order awarding 35% fee for settlement that was 8.3% of total damages);

- *Evans v. Zions Bancorporation, N.A.*, No. 2:17-cv-01123, 2022 WL 16815301, at *1 (E.D. Cal. Nov. 8, 2022) (Shubb, J.) (final approval order awarding 30% fee for

settlement that was approximately 25% of potential
damages);

- *Accord Vasquez v. Coast Valley Roofing, Inc.*, 266
  F.R.D. 482, 492 (E.D. Cal. 2010) (Wanger, J.) (showing
  fee awards in wage-and-hour cases ranging from 30% to
  33.3%).

Courts in antitrust cases with recoveries under $100 million
often do as well:

- *In re Transpacific Passenger Air Transp. Antitrust
  Litig.*, No. C 07-05634, 2015 WL 3396829, at *2 (N.D.
  Cal. May 26, 2015) (28.86% fee in $39.5 million
  settlement);

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-
  1827, 2013 WL 149692, at *2 (N.D. Cal. Jan. 14, 2013)
  (30% fee in direct purchaser $68 million settlement);

- *In re Static Random Access Memory (SRAM) Antitrust
  Litig.*, No. 07-md-1819 (N.D. Cal. Oct. 14, 2011) (Dkt.
  No. 1407) (33.33% fee in $41.3 million settlement);

- *Meijer, Inc. v. Abbott Labs.*, No. C 07-5985, 2011 WL
  13392313, at *2 (N.D. Cal. Aug. 11, 2011) (33.33% fee
  in $52 million in § 2 Sherman Act case);

- Lande & Davis, *Benefits from Private Antitrust
  Enforcement: An Analysis of Forty Cases*, 42 U.S.F. L.
  Rᴇᴠ. 879, 911 tbl. 7A (2008) (study showing fee awards
  of 30% or more were given in 11 of 16 antitrust cases
  with recoveries of less than $100 million).

1    Courts have even done so in certain antitrust cases with a
2  settlement of over $100 million:

3        • *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264,
4          2023 WL 2396782, at *1–*2 (N.D. Cal. Mar. 6, 2023)
5          (31.01% fee in $604.5 million settlement);

6        • *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-
7          MD-02420, 2020 WL 7264559, at *23 (N.D. Cal. Dec. 10,
8          2020) (~30% fee in $113 million settlement);

9        • *In re Lidoderm Antitrust Litig.*, MDL No. 2521, 2018 WL
10         4620695, at *1 (N.D. Cal. Sept. 20, 2018) (33.33% fee
11         in $104.75 million settlement);

12       • *In re Urethane Antitrust Litig.*, MDL No. 1616, 2016 WL
13         4060156, at *6 (D. Kan. July 29, 2016) (33.33% fee in
14         $835 million settlement);

15       • *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-
16         07-5944, 2016 WL 183285, at *2 (N.D. Cal. Jan. 14,
17         2016) (30% fee in $127.4 million settlement);

18       • *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD
19         2196, 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015)
20         (30% fee in $147.8 million settlement);

21       • *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-
22         1827, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013)
23         (28.6% fee in indirect purchaser $1.08 billion
24         settlement);

25       • *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004
26         WL 1221350, at *16 (E.D. Pa. June 2, 2004) (30% fee in
27         $202.5 million settlement);

28

- *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839 (D.D.C. July 16, 2001) (34.06% fee in early $1.05 billion settlement following prior government investigation and prosecution).

In short, the requested 30% fee is well in line with fees approved in other cases, and especially in antitrust cases.

**II.  A Lodestar Cross-Check Confirms that the Proposed Fee Is Reasonable.**

Under the right circumstances, a district court need not perform a lodestar cross-check. *Andrews v. Plains All Am. Pipline, L.P.*, No. CV 15-4113, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) ("Based on the unique circumstances of this case and because all of the *Vizcaino* factors considered under the percentage-of-recovery method heavily support Plaintiffs' requested fee, the Court forgoes cross-checking the reasonableness of the fee against the lodestar method."). Yet a lodestar crosscheck "may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050. When the lodestar is being used merely as a cross-check, "courts may do a rough calculation with a less exhaustive cataloging and review of counsel's hours" by using summaries submitted by attorneys instead of actual billing records. *Carlin*, 380 F. Supp. 3d at 1022.

A lodestar cross-check confirms the reasonableness of Class Counsel's anticipated fee request. Class Counsel's lodestar through June 30, 2025 is $5,904,490. *See* Broshuis Fee Decl. at ¶

42. Class Counsel has devoted 8,045.35 hours to the case thus far. *Id.* at ¶ 33.

As of March 2025, the normal hourly rates for the two primary partners working on this case were $900 and $1,000, while the hourly rates for the primary non-partner attorneys working on the case range from $400 to $650. *Id.* at ¶ 35. It is typical to use current rather than historical rates when computing the lodestar. *See MHC Fin., Ltd v. City of San Rafael*, No. C 00-3785 VRW, 2009 WL 10696045, at *12 (N.D. Cal. Apr. 17, 2009) (concluding that current hourly rates should be used instead of historical rates because it "simplifies the calculation and accounts for the time value of money in that the attorney fees were not paid contemporaneously with the work) (relying on *Vizcaino*, 290 F.3d at 1051 ("Calculating fees at prevailing rates to compensate for delay in receipt of payment was within the district court's discretion.")). Despite that, and to be more conservative, Class Counsel has used the firm's customary rates from March 2025 instead of the firm's recently increased rates from April 2025. *Id.* at ¶ 34. That results in a lower lodestar than if the April 2025 rates had been used. The rates were the firms' standard rates in March 2025, and the undersigned has used these rates when billing for hourly work. *Id.* at ¶ 34-35.

Generally, courts look to the local legal community when determining the prevailing market rate. *Ontiveros v. Zamora*, 303 F.R.D. 356, 374 (E.D. Cal. 2014) (Shubb, J.). Four years ago, this Court accepted an hourly rate of $925 for partners and $680-775 for associates for purposes of doing a lodestar crosscheck.

*Kimbo*, 2021 WL 492493, at \*8. This is consistent with Class Counsel's rates, even though rates have increased since that case was decided four years ago.

In any event, "[t]here is an exception to the local forum rule. 'Rates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Ontiveros*, 303 F.R.D. at 374 n.11 (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Here, local counsel should be deemed *de facto* unavailable. The NCAA bylaw at issue was first enacted in 1992, and no local attorney filed an antitrust case challenging it. While there are undoubtedly talented attorneys in Sacramento, Class Counsel is unaware of any local attorneys who regularly litigate large-scale, complex antitrust actions, and none pursued this case. The only attorneys willing to pursue this case were Class Counsel. Plaintiffs thus respectfully request that the Court base its lodestar cross check on Class Counsel's standard market rates given the specialized and national character of this case. To be sure, Class Counsel's hourly rates are not bargain basement. But they are likely less than the rates paid by the NCAA to its San Francisco-based defense counsel.[10] The class is

---

[10]   *See* Broshuis Fee Decl. at ¶ 37 (noting a recent court submission in another case from the firm representing the NCAA, in which the firm showed rates of up to $2,270 per hour for a partner and up to $1,235 per hour for an associate); *cf. In re College Athlete NIL Litig.*, No. 4:20-cv-03919-CW (N.D. Cal. Apr. 7, 2025), ECF No. 583-3, at Ex. A (showing hourly rates of up to $1,980 for partners and up to $1,220 for associates in a sports antitrust class action against the NCAA) (fee request was approved at ECF No. 978); *In re Nat'l Collegiate Athletic Ass'n*

entitled to equally qualified representation, and the strength of

the overall settlement shows the class ultimately got what it

paid for.

A 30% fee would amount to a lodestar multiplier of 2.5.

Broshuis Fee Decl. at ¶ 43. "[C]ourts have routinely enhanced the

lodestar to reflect the risk of non-payment in common fund

cases," and often use a multiplier between 1 and 4. *Vizcaino*, 290

F.3d at 1051 & n.6 (noting 83% of surveyed cases fell within this

range); *Carlin*, 380 F. Supp. 3d at 1022 ("Multipliers in the 3-4

range are common in lodestar awards for lengthy and complex class

action litigation."). Both the Ninth Circuit and this Court have

approved of fees resulting in a multiplier on the higher end.

*Vizcaino*, 290 F.3d at 1051 (affirming a lodestar multiplier of

3.65); *Mejia*, 2021 WL 1122390, at *9 (3.56 lodestar multiplier);

*Kimbo*, 2021 WL 492493, at *8 (3.7 lodestar multiplier).

---

*Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14-MD-02541-CW
(NC), 2019 WL 12194763, at *3 (N.D. Cal. Dec. 6, 2019), *adopted*
(Feb. 24, 2020) (finding that rates up to $1,515 in a similarly
complex sports case "are reasonable"); *Kang v. Wells Fargo Bank,
N.A.*, No. 17-CV-06220-BLF, 2021 WL 5826230, at *17 (N.D. Cal.
Dec. 8, 2021) (in a wage/hour case, approving of rates between
$325 and $1,150 per hour); *In re Lidoderm Antitrust Litig.*, No.
14-MD-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20,
2018) (finding seven years ago rates ranging from "$350 to $1,050
for partners and senior counsel, $300 to $675 for associates, and
$100 to $400 for paralegals and other litigation staff (including
senior cases managers)" were reasonable); *In re Nat'l Collegiate
Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No.
4:14-MD-2541-CW, 2017 WL 6040065, at *8-*9 (N.D. Cal. Dec. 6,
2017) (finding eight years ago that rates of up to $1,035 were
reasonable, and citing a "reputable" 2015 survey of rates in San
Francisco showing billing rates of between $200 and $1,080),
*aff'd*, 768 F. App'x 651 (9th Cir. 2019).

The multiplier here is lower than in those cases, and it is deserved under the factors that courts consider,[11] as already discussed. And of course, Class Counsel's work is not fully finished. Throughout the settlement administration process, Class Counsel will expend many additional hours communicating with class members, working with the administrator, drafting final approval papers, and addressing any other issues that might arise.

A lodestar check therefore confirms that Class Counsel has requested a reasonable fee.

## III. The Request for Reimbursement of Litigation Expenses Should Be Approved.

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Kabasele*, 2024 WL 477221, at *8 (Shubb, J.); *Griffin*, 2023 WL 3853643, at *8 (Shubb, J.) (same). The standard of reasonableness is given a "liberal interpretation," *Carlin*, 380 F. Supp. 3d at 1024, and "the award should be limited to typical out-of-pocket expenses that are charged to a fee-paying client," *id.* at 1023. Reimbursable costs include items such as "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online

---

[11] *In re Bluetooth*, 654 F.3d at 941–42 (factors that the court considers in determining which lodestar multiplier to use include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment," with benefit obtained the "foremost among these considerations").

legal research; (7) class action notices; (8) experts,
consultants, and investigators; and (9) mediation fees." *Id.* at
1023–24.

Class Counsel notified the class that it would seek
reimbursement of costs and expenses up to $1.5 million. ECF No.
73-4 at 21. To date, Class Counsel has incurred costs totaling
$1,377,052.39. Broshuis Fee Decl. at ¶ 44. These costs fall
within the reimbursable categories, and are summarized in
counsel's supporting declaration. *See id.* at ¶¶ 45-46. Class
Counsel incurred those costs while prosecuting this case for
several years. They directly benefitted the class in this complex
antitrust case and are of the type that would have been charged
to a paying client in a non-contingency case. *Id.* Plaintiffs thus
respectfully ask that the Court award these costs.

**CONCLUSION**

Class Counsel respectfully requests that the Court award 30%
of the common fund in attorneys' fees ($14,775,000) in
recognition of the years of contingency fee work that went into
creating an outstanding common settlement fund that provides
meaningful and impressive relief to class members. Plaintiffs
also request reimbursement of the litigation costs that Class
Counsel has incurred: 1,377,052.39.

**Motion for Attorneys' Fees and Litigation Costs**

DATED: July 2, 2025                 Respectfully submitted,


                                    /s/ Garrett R. Broshuis
                                   KOREIN TILLERY, LLC
                                   Stephen M. Tillery (*pro hac vice*)
                                   Steven M. Berezney
                                   Garrett R. Broshuis

                                   *Attorneys for Plaintiffs and*
                                   *the Class*


## CERTIFICATE OF SERVICE

    I hereby certify that on July 2, 2025, I electronically

filed the foregoing with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to all

attorneys of record registered for electronic filing.

                                   */s/ Garrett R. Broshuis*