1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   TAYLOR SMART AND MICHAEL HACKER,    No. 2:22-cv-02125 WBS CSK
     Individually and on Behalf of
13   All Those Similarly Situated,

14            Plaintiffs,               MEMORANDUM AND ORDER RE:
                                        PLAINTIFFS' MOTION FOR FINAL
15        v.                            APPROVAL OF CLASS ACTION AND
                                        MOTION FOR ATTORNEYS' FEES
16   NATIONAL COLLEGIATE ATHLETIC       AND COSTS
     ASSOCIATION, an unincorporated
17   association,

18            Defendant.

19

20                          ----oo0oo----

21        Plaintiffs Taylor Smart and Michael Hacker brought this

22   putative class action against defendant National Collegiate

23   Athletic Association ("NCAA"), alleging violations of section 1

24   of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Unfair

25   Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.  (See

26   (Docket Nos. 1, 29.)  This court granted plaintiffs' motion for

27   preliminary approval of a class action settlement.  (Order

28
                                  1

1  Granting Prelim. Approval.)  Plaintiffs now move for final

2  approval.  (See Docket No. 83.)

3        The Ninth Circuit has declared a strong judicial policy

4  favoring settlement of class actions.  Class Plaintiffs v. City

5  of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also

6  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)

7  ("We put a good deal of stock in the product of an arms-length,

8  non-collusive, negotiated resolution[.]") (citation omitted).

9  Federal Rule of Civil Procedure 23(e) provides that "[t]he

10  claims, issues, or defenses of a certified class may be settled

11  . . . only with the court's approval."  Fed. R. Civ. P. 23(e).

12        "Approval under 23(e) involves a two-step process in

13  which the Court first determines whether a proposed class action

14  settlement deserves preliminary approval and then, after notice

15  is given to class members, whether final approval is warranted."

16  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,

17  525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third),

18  § 30.41 (1995)).  This court satisfied step one by granting

19  plaintiffs' unopposed motion for preliminary approval of class

20  action settlement on April 30, 2025.  (Docket No. 80.)  Now,

21  following notice to the class members, the court will consider

22  whether final approval is merited by evaluating: (1) the

23  treatment of this litigation as a class action and (2) the terms

24  of the settlement.  See Diaz v. Tr. Territory of Pac. Islands,

25  876 F.2d 1401, 1408 (9th Cir. 1989).

26  I.   Class Certification

27        The putative class consists of "[a]ll persons who,

28  pursuant to NCAA Division I Bylaw 11.7.6, served as a 'volunteer

2

coach' in college baseball at an NCAA Division I school from
November 29, 2018 to July 1, 2023." (<u>See</u> Settlement Agreement
(Docket No. 73-1 at 27 ¶ 2.29)  The class has approximately 1,000
members.  (<u>See</u> Broshuis Decl. (Docket No. 73-1) ¶ 8.)

To be certified, the putative class must satisfy the
requirements of Federal Rules of Civil Procedure 23(a) and 23(b).
<u>Leyva v. Medline Indus. Inc.</u>, 716 F.3d 510, 512 (9th Cir. 2013).

A.   <u>Rule 23(a)</u>

Rule 23(a) restricts class actions to cases where: "(1)
the class is so numerous that joinder of all members is
impracticable [numerosity]; (2) there are questions of law or
fact common to the class [commonality]; (3) the claims or
defenses of the representative parties are typical of the claims
or defenses of the class [typicality]; and (4) the representative
parties will fairly and adequately protect the interests of the
class [adequacy of representation]."  <u>See</u> Fed. R. Civ. P. 23(a).

In the court's order granting preliminary approval of
the settlement, the court found that the putative class satisfied
the Rule 23(a) requirements.  (<u>See</u> Order Granting Prelim.
Approval at 4-10.)  The court is unaware of any changes that
would affect its conclusion that the putative class satisfies the
Rule 23(a) requirements, and the parties have not indicated that
they are aware of any such developments.

Accordingly, the court finds that the class definition
proposed by plaintiffs meets the requirements of Rule 23(a).

B.   <u>Rule 23(b)</u>

After fulfilling the threshold requirements of Rule
23(a), the proposed class must satisfy the requirements of one of

3

1   the three subdivisions of Rule 23(b).  <u>Leyva</u>, 716 F.3d at 512.

2   Plaintiffs seek certification under Rule 23(b)(3), which provides

3   that a class action may be maintained only if (1) "the court

4   finds that questions of law or fact common to class members

5   predominate over questions affecting only individual members" and

6   (2) "that a class action is superior to other available methods

7   for fairly and efficiently adjudicating the controversy."  Fed.

8   R. Civ. P. 23(b)(3).

9        In its order granting preliminary approval of the

10  settlement, the court found that both the predominance and

11  superiority prerequisites of Rule 23(b)(3) were satisfied.

12  (Order Granting Prelim. Approval at 10-12.)  The court is unaware

13  of any changes that would affect its conclusion that Rule

14  23(b)(3) is satisfied.  Because the settlement class satisfies

15  both Rule 23(a) and 23(b)(3), the court will grant final class

16  certification of this action.

17       C.   <u>Rule 23(c)(2) Notice Requirements</u>

18       If the court certifies a class under Rule 23(b)(3), it

19  "must direct to class members the best notice that is practicable

20  under the circumstances, including individual notice to all

21  members who can be identified through reasonable effort."  Fed.

22  R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

23  content of a proposed notice.  <u>See</u> <u>Ravens v. Iftikar</u>, 174 F.R.D.

24  651, 658 (N.D. Cal. 1997) (citing <u>Eisen v. Carlisle & Jacquelin</u>,

25  417 U.S. 156, 172-77 (1974)).  Although that notice must be

26  "reasonably certain to inform the absent members of the plaintiff

27  class," actual notice is not required.  <u>Silber v. Mabon</u>, 18 F.3d

28  1449, 1454 (9th Cir. 1994) (citation omitted).

4

1          Plaintiffs' counsel provided the court with a proposed

2  email notice and proposed postcard notice to be sent to class

3  members.  (See Docket No. 73-3 at 57-62.)  The notices explain

4  the proceedings, define the scope of the class, and explain what

5  the settlement provides and the minimum amount each class member

6  can expect to receive in compensation.  (See id.)  The notices

7  further explain the opt-out procedure, the procedure for

8  objecting to the settlement, and the date and location of the

9  final approval hearing.  (See id.)  The content of the notices

10  therefore satisfies Rule 23(c)(2)(B).  See Fed. R. Civ. P.

11  23(c)(2)(B); Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566,

12  575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally

13  describes the terms of the settlement in sufficient detail to

14  alert those with adverse viewpoints to investigate and to come

15  forward and be heard.'") (quoting Mendoza v. Tucson Sch. Dist.

16  No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

17          The parties selected Kroll Settlement Administration

18  LLC to serve as the Settlement Administrator.  (See Docket No. 83

19  at 12.)  The class was notified by the Settlement Administrator

20  "via email, a postcard summary notice via first-class U.S. mail,

21  and the long-form notice posted on the settlement website."

22  (Docket No. 83 at 7.)  Emails were sent to 786 class members with

23  last-known email addresses, and first-class mail was sent to 893

24  class members with last-known physical addresses.  (Id. at 13.)

25  The USPS returned 102 mailings as undeliverable.  (Id.)  Sixty-

26  seven mail notices were re-sent after contact information was

27  verified and updated.  (Id.)  Email notices were also re-sent

28  after follow-up communications with class members.  (Id.)

1          Class Counsel further contacted class members to ensure
2     they knew about the settlement and encouraged them to submit
3     information via the settlement website.  (Id. at 8.)  Finally,
4     Class Counsel instructed the American Baseball Coaches
5     Association to notify its member-coaches about the settlement.
6     (Id.)

7          All told, the Settlement Administrator "has reason to
8     believe that approximately 98.82%" of the class received notice.
9     (Id. (citation modified).)  The court appreciates the thorough
10    efforts taken by the parties to effectuate notice and is
11    satisfied that the notice procedure was "reasonably calculated,
12    under all the circumstances," to apprise all class members of the
13    proposed settlement.  See Roes, 944 F.3d at 1045-46.

14    II.  Final Settlement Approval

15         Having determined that class treatment is warranted,
16    the court must now address whether the terms of the parties'
17    settlement appear fair, adequate, and reasonable.  See Fed. R.
18    Civ. P. 23(e)(2).  To determine the fairness, adequacy, and
19    reasonableness of the agreement, Rule 23(e) requires the court to
20    consider four factors: "(1) the class representatives and class
21    counsel have adequately represented the class; (2) the proposal
22    was negotiated at arm's length; (3) the relief provided for the
23    class is adequate; and (4) the proposal treats class members
24    equitably relative to each other."  Id.  The Ninth Circuit has
25    also identified eight additional factors the court may consider,
26    many of which overlap substantially with Rule 23(e)'s four
27    factors:
28         The strength of the plaintiff's case; the risk,

1
2
3
4
5

> expense, complexity, and likely duration of
> further litigation; the risk of maintaining class
> action status throughout the trial; the amount
> offered in settlement; the extent of discovery
> completed and the stage of the proceedings; the
> experience and views of counsel; the presence of
> a governmental participant; and the reaction of
> the class members to the proposed settlement.

6

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

7

    A.   Adequate Representation

8
9
10
11
12
13
14
15
16
17

The court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) . . . ." Hudson v. Libre Tech., Inc., No. 3:18-cv-1371 GPC KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (quoting 4 Newberg on Class Actions § 13:48 (5th ed.)); see also In re GSE Bonds Antitr. Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiries under Rule 23(a)(4) and Rule 23(e)(2)(A)).

18
19
20
21

Because the Court has found that the proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met. See Hudson, 2020 WL 2467060, at *5.

22

    B.   Negotiation of the Settlement Agreement

23
24
25
26
27
28

This action was filed in 2022. (Docket No. 1.) The court disposed of NCAA's motions to dismiss and transfer venue in 2023. (Docket No. 29.) The parties attempted mediation in summer 2024 but were unsuccessful in reaching a settlement at that time. (Broshuis Decl. ¶ 11.) Following extensive discovery, including several discovery motions (Docket Nos. 49-

1    50), and complex briefing on plaintiffs' motion for class

2    certification (see Docket Nos. 63-67), the parties engaged in

3    settlement discussions and reached a settlement in January 2025.

4    (See Broshuis Decl. ¶¶ 6-11.)  In its preliminary approval order,

5    this court instructed counsel to "provide additional information

6    concerning the settlement discussions to allow the court to fully

7    evaluate whether there are signs of collusion."  (Order Granting

8    Prelim. Approval at 16.)

9           Counsel represents that in light of the extensive

10    briefing, discovery, and knowledge gained from prior mediation,

11    the settlement discussion in January 2025 was conducted without a

12    mediator.  (See Docket No. 83 at 17.)  During that discussion,

13    the parties "talked and exchanged positions, offers, and

14    counteroffers several times over the course of a week."  (Id. at

15    18.)  The discussions were informed by "expert analyses derived

16    from the subpoenaed school data" and "class certification

17    briefing."  (Id.)  The parties ultimately reached an agreement on

18    January 31, 2025, which provided class members with over 90% of

19    their damages.  (Id.)

20           Given the parties' representation that the settlement

21    reached was the product of arms-length bargaining following

22    thorough informal discovery, the court finds that the proposed

23    settlement is the result of informed and non-collusive

24    negotiations between the parties.  See La Fleur v. Med. Mgmt.

25    Int'l, Inc., No. 13-cv-00398, 2014 WL 2967475, at *4-5 (C.D. Cal.

26    June 25, 2014).

27           C.   Adequate Relief

28                In determining whether a settlement agreement provides

8

adequate relief for the class, the court must "take into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any [other] agreement[s]" made in connection with the proposal. See Fed. R. Civ. P. 23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

The court notes that, in evaluating whether the settlement provides adequate relief, it must consider several of the same factors outlined in Hanlon, including the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; and the amount offered in settlement. See Hanlon, 150 F.3d at 1026.

In determining whether a settlement agreement is substantively fair to class members, the court must balance the value of expected recovery against the value of the settlement offer. See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). When a settlement was reached prior to class certification, it is subject to heightened scrutiny for purposes of final approval. See In re Apple Inc., 50 F.4th at 782. The recommendations of plaintiffs' counsel will not be given a presumption of reasonableness, but rather will be subject to close review. See id. at 782-83. The court will particularly scrutinize "any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations."

9

1    See id. at 782 (quoting Roes, 944 F.3d at 1043).

2         Plaintiffs' expert calculated the total damages

3    suffered by class members to be $49,790,000.  (Rascher Decl.

4    (Docket No. 73-2) ¶ 9.)  The common settlement fund is

5    $49,250,000, approximately 99% of the estimated calculation.

6    (See Docket No. 83 at 19-20.)  Plaintiffs propose to allocate

7    that amount as follows: (1) $32,917,797.61 in payments to class

8    members; (2) $14,775,000 for plaintiffs' counsel's fees and

9    $1,377,052.39 for costs and expenses; (3) $30,150 to pay the

10   settlement administrator and $35,000 to pay the economist for

11   work on the settlement administration; (4) $7,500 incentive

12   awards for the two named plaintiffs; and (5) a contingency fund

13   of $100,000.  (See id. at 2-3.)

14        The portion of the settlement allocated to class member

15   payments -- $32,917,797.61 -- constitutes approximately 66.84% of

16   the maximum valuation.  This represents a strong result for the

17   class and is comfortably within the range of percentage

18   recoveries that California courts have found to be reasonable.

19   See Cavazos v. Salas Concrete, Inc., No. 1:19-cv-00062 DAD EPG,

20   2022 WL 2918361, at *6 (E.D. Cal. July 25, 2022) (collecting

21   cases).  Based on these figures, the average payment per class

22   member is $36,000.  This five-figure payout also represents a

23   strong result for the class.

24        Payments to class members will be allocated according

25   to the number of years worked and the school for which each

26   member worked.  (See Docket No. 83 at 3.)  Plaintiffs will

27   calculate class member allotments using their expert's

28   methodology, which estimates member entitlements based on actual

10

1  third assistant coach salaries in 2023, deflated according to

2  compensation changes for other assisted coaches over time.  (Id.)

3  If a school has not provided data, plaintiffs' expert uses data

4  from a comparable peer school, ensuring school-specific damages.

5  (Id.)  The final calculation includes the value of unprovided

6  health benefits, which are also deflated in keeping with the

7  likely value of those benefits for the relevant year worked.

8  (Id. at 4.)

9          Plaintiffs faced numerous hurdles in this antitrust

10  litigation, including proving all elements of the claims,

11  obtaining and maintaining class certification, establishing

12  liability, and the costliness of litigation and potential appeals

13  on these issues.  To begin with, plaintiffs' motion for class

14  certification was contested.  (Id. at 23.)  Litigation and

15  probable appeal of certification alone would have meant onerous

16  delay and expense.  Defendants alleged several procompetitive

17  justifications for their policy, any one of which, had it

18  succeeded, would have defeated plaintiffs' case.  (See Docket No.

19  63-10 at 20.)  Defendants also challenged plaintiffs' expert

20  methodology during certification; had they successfully brought

21  that challenge at a later stage it may well have barred recovery

22  of damages entirely.  (See Docket No. 83 at 24-25.)

23          In light of the risks associated with further

24  litigation and the relative strength of defendant's arguments,

25  the court finds that the value of the settlement counsels in

26  favor of granting final approval.  The court further finds the

27  method of processing class member claims to be adequate.  Each

28  class member's individual share of the settlement is

1  proportional to the amount of time each member worked and the

2  school for which they worked.  The court is also satisfied that

3  counsel's requested fees are reasonable and support approval of

4  the settlement, which it will address in greater detail below.

5         D.   Equitable Treatment of Class Members

6              Finally, the court must consider whether the Settlement

7  Agreement "treats class members equitably relative to each

8  other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the court

9  determines whether the settlement "improperly grant[s]

10 preferential treatment to class representatives or segments of

11 the class."  Hudson, 2020 WL 2467060, at *9 (quoting Tableware,

12 484 F. Supp. at 1079).

13             Here, the Settlement Agreement does not improperly

14 discriminate between any segments of the class, as all class

15 members are entitled to monetary relief based on the amount of

16 time worked as a volunteer coach and the school for which the

17 class member worked.  (See Docket No. 83 at 3.)

18        E.   Remaining Hanlon Factors

19             In addition to the factors already considered as part

20 of the court's analysis under Rule 23(e)(A)-(D), the court must

21 also examine "the extent of the discovery completed . . ., the

22 presence of government participation, and the reaction of class

23 members to the proposed settlement."  Hanlon, 150 F.3d at 1026.

24             As explained above, counsel engaged in thorough

25 informal discovery.  This factor thus weighs in favor of final

26 approval of the settlement.

27             The seventh Hanlon factor pertains to government

28 participation.  See Hanlon, 150 F.3d at 1026.  As there is no

government participation in this case, this factor is neutral.

The eighth <u>Hanlon</u> factor, the reaction of the class members to the proposed settlement, also weighs in favor of final approval.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1026.  The class has expressed "overwhelming support," responding to hundreds of phone calls and emails and providing thankful and supportive comments.  (<u>See</u> Broshuis Final Approval Decl. ¶ 5.)  None of the class members have opted out or objected.  (<u>Id.</u>)

In sum, the four factors that the court must evaluate under Rule 23(e) and the eight <u>Hanlon</u> factors, taken as a whole, weigh in favor of approving the settlement.  The court will therefore grant final approval of the Settlement Agreement.

III. <u>Attorneys' Fees</u>

Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  If a negotiated class action settlement includes an award of attorneys' fees, that fee award must be evaluated in the overall context of the settlement.  <u>Knisley v. Network Assocs.</u>, 312 F.3d 1123, 1126 (9th Cir. 2002); <u>Monterrubio v. Best Buy Stores, L.P.</u>, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  <u>In re Bluetooth Headset Prod. Liab. Litig.</u>, 654 F.3d 935, 941 (9th Cir. 2011).  "Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his

1    client is entitled to a reasonable [attorneys'] fee from the fund

2    as a whole.'" Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir.

3    2003) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478

4    (1980)).  In common fund cases, the district court has discretion

5    to determine the amount of attorneys' fees to be drawn from the

6    fund by employing either the percentage method or the lodestar

7    method.  Id.  The court may also use one method as a "cross-

8    check[ ]" upon the other method.  See Bluetooth Headset, 654 F.3d

9    at 944.

10         Like other complex antitrust class actions, this case

11   presented both counsel and the class with a risk of no recovery

12   at all, as already discussed above.  Plaintiffs' counsel took on

13   this matter on a contingency basis.  (See Broshuis Fee Decl. ¶

14   47.)  The nature of contingency work inherently carries risks

15   that counsel will sometimes recover very little to nothing at

16   all, even for cases that may be meritorious.  See Kimbo v. MXD

17   Group, Inc., No. 2:19-cv-00166 WBS KNJ, 2021 WL 492493, at *7

18   (E.D. Cal. Feb. 10, 2021).

19         Where counsel do succeed in vindicating rights on

20   behalf of a class, they depend on recovering a reasonable

21   percentage-of-the-fund fee award to enable them to take on

22   similar risks in future cases.  See id.  Plaintiffs' counsel

23   argues that, in light of the result obtained and substantial risk

24   taken in this case, a $14,775,000 fee constituting 30% of the

25   fund is reasonable.  (See Docket No. 82 at 4.)  To support their

26   position, plaintiffs cite numerous antitrust class action cases

27   in this circuit -- awarding below and above $100 million --

28   wherein attorneys' fees exceeded 30% of the common fund.  (See

                                    14

1    Docket No. 82 at 15-18.)

2         The Ninth Circuit has established 25% of the fund as

3    the "benchmark" award that should be given in common fund cases.

4    Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301,

5    1311 (9th Cir. 1990).  But as plaintiffs point out, "courts in

6    this circuit have approved fees that exceeded that benchmark in

7    many cases."  Osegueda v. Northern California Inalliance, No. 18-

8    cv-00835 WBS EFB, 2020 WL 4194055, at *6 (E.D. Cal. July 21,

9    2020) (citation modified).  "A fees award amounting to '33 1/3%

10   of the total settlement value' is considered 'acceptable.'"  Id.,

11   at *6; see also Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB,

12   2020 WL 5502318, at *7 (E.D. Cal. Sep. 11, 2020) (awarding 33.33%

13   of settlement fund).  Given that the requested fee is in line

14   with the typical practice in the Ninth Circuit and in this

15   district, the court agrees that plaintiffs' counsel's requested

16   percentage of the common fund is reasonable.

17         "Calculation of the lodestar, which measures the

18   lawyers' investment of time in the litigation, provides a check

19   on the reasonableness of the percentage award."  Vizcaino v.

20   Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002).  See In re

21   Bluetooth Headset, 654 F.3d at 941-42.  As part of this lodestar

22   calculation, the court may consider factors such as the "level of

23   success" or "results obtained" by plaintiffs' counsel.  See id.

24         To determine whether counsel has employed a "reasonable

25   hourly rate" for purposes of calculating the lodestar amount, the

26   court must look to the "prevailing market rates in the relevant

27   community."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1206

28   (9th Cir. 2013) (quoting Blum v. Stenson, 465 886, 895 (9th Cir.

15

1    2001)).  "Generally, when determining a reasonable hourly rate,

2    the relevant community is the forum in which the district court

3    sits."  Id. (internal quotation marks omitted) (quoting Prison

4    Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir.2010)).

5    Within this geographic community, the district court should

6    "tak[e] into consideration the experience, skill, and reputation

7    of the attorney [or paralegal]."  Dang v. Cross, 422 F.3d 800,

8    813 (9th Cir. 2005) (internal quotation marks omitted).

9         Plaintiffs direct the court's attention to an exception

10   to the local forum rule, whereby a non-local rate "may be used if

11   local counsel was unavailable, either because they are unwilling

12   or unable to perform because they lack the degree of experience,

13   expertise, or specialization to properly handle the case."

14   Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).  Counsel

15   argues "local counsel should be deemed de facto unavailable"

16   owing to the lack of "local attorneys who regularly litigate

17   large-scale, complex antitrust actions" in Sacramento.  (Docket

18   No. 82 at 20 (citation modified).)  They argue instead that

19   "national rates" should be applied "because of the specialized

20   nature of the work performed."  (Broshuis Fee Decl. ¶ 39.)

21        Counsel represents that they have dedicated a total of

22   8,045.35 hours of work to this case; they have submitted billing

23   records to confirm this number.  (See Docket No. 82-1 at 34.)

24   Counsel states the typical hourly rates for the partners working

25   on this case were $900 and $1000, while the typical rates for the

26   non-partners ranged from $400 to $600.  (See Broshuis Fee Decl.

27   at 10-11.)  They further state that they have previously been

28   awarded fees at those amounts in this circuit.  (See id. (citing

16

1  <u>Senne v. Office of the Comm'r of Baseball</u>, No. 3:14-cv-00608 JCS

2  (N.D. Cal. Nov. 23, 2022) ECF No. 1147-1).)  Finally, counsel

3  cites several California fee awards in other sports antitrust

4  class action cases that are in line with their requested rates.

5  (See <u>id.</u>)

6       Counsel avows that their firm "regularly works on some

7  of the most complex cases in the country . . . and has been

8  appointed as class counsel in over 50 class actions."  (See <u>id.</u> ¶

9  3.)  More pertinently, the firm "practices extensively in the

10  area of large antitrust class actions," and its attorneys have

11  over 20 years of experience working on antitrust class actions

12  and on sports litigation in particular.  (See <u>id.</u> ¶ 39.)

13  Counsel's firm has been "repeatedly honored as one of the

14  country's top plaintiff's firms" and has "negotiated some of the

15  country's largest class action settlements."  (Docket No. 82-1 at

16  21.)  Finally, counsel represents that the result achieved in

17  this action -- nearly 100% of alleged damages -- supports the

18  requested fees.  (See Docket No. 82 at 5-6.)

19       In light of the evidence presented of counsel's

20  reputation in litigating matters of this kind, alongside the

21  skill and specialization put to use in achieving the exceptional

22  result in this case and the lack of available local counsel, the

23  court is satisfied that a non-local rate is appropriate and thus

24  that counsel's requested rate is reasonable.

25       Counsel has provided a list of attorneys who worked on

26  the matter along with their rates and hours worked.  (Docket No.

27  82-1 at 34.)  Based on 8,045.35 hours billed at the stipulated

28  rates, the lodestar figure is $5,904,490.00.  The requested

17

1  amount of $14,775,000 exceeds the lodestar figure by a factor of

2  2.5.  However, this multiplier is "well within the acceptable

3  range in complex class action cases" and is therefore reasonable.

4  Ziegler v. GW Pharmaceuticals, PLC, No. 21-cv-1019 BAS MSB, 2024

5  WL 1470532 (S.D. Cal. Apr. 3, 2024) (affirming fee award with

6  lodestar multiplier of 2.87); see also Vizcaino v. Microsoft

7  Corp., 290 F.3d 1043, 1051 (9th Cir. 2002) (same, with 3.65).

8       Accordingly, the court finds the requested fees to be

9  reasonable and will grant counsel's motion for attorneys' fees.

10  IV.  Costs

11       "There is no doubt that an attorney who has created a

12  common fund for the benefit of the class is entitled to

13  reimbursement of reasonable litigation expenses from that fund."

14  In re Heritage Bond Litig., No. 02-cv-1475, 2005 WL 1594403, at

15  *23 (C.D. Cal. June 10, 2005).  Costs may be recovered where they

16  "have been adequately documented and reasonably incurred for the

17  benefit of the class."  Odrick v. UnionBancal Corp., No. C 10-

18  5565 SBA, 2012 WL 6019495 (N.D. Cal. Dec. 3, 2012).

19       Counsel's litigation expenses and costs total

20  $1,377,052.39.  (See Broshuis Fee Decl. ¶¶ 44-46.)  These

21  expenses include research fees, expert consultation fees, travel

22  expenses, transcript fees, service fees, and other court costs.

23  (See id.)  Counsel has documented these costs and shown their

24  benefit to the class.  (See id. ¶¶ 44-51.)  The court finds these

25  are reasonable litigation expenses.  Therefore, the court will

26  grant class counsel's request for costs in the amount of

27  $1,377,052.39.

28  V.   Representative Service Award

1    "Incentive awards are fairly typical in class action

2   cases." Rodriguez, 563 F.3d at 958. "[They] are intended to

3   compensate class representatives for work done on behalf of the

4   class, to make up for financial or reputational risk undertaken

5   in bringing the action." Id. at 958-59.

6    Nevertheless, the Ninth Circuit has cautioned that

7   "district courts must be vigilant in scrutinizing all incentive

8   awards to determine whether they destroy the adequacy of the

9   class representatives . . . ." Radcliffe v. Experian Info.

10  Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013). In

11  assessing the reasonableness of incentive payments, the court

12  should consider "the actions the plaintiff has taken to protect

13  the interests of the class, the degree to which the class has

14  benefitted from those actions" and "the amount of time and effort

15  the plaintiff expended in pursuing the litigation." Staton, 327

16  F.3d at 977 (citation omitted). The court must balance "the

17  number of named plaintiffs receiving incentive payments, the

18  proportion of the payments relative to the settlement amount, and

19  the size of each payment." Id.

20    In the Ninth Circuit, an incentive award of $5,000 is

21  presumptively reasonable. Davis v. Brown Shoe Co., Inc., No.

22  1:13-cv-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3,

23  2015) (citing Harris v. Vector Marketing Corp., No. 08-cv-5198

24  EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting

25  cases)).

26    Plaintiffs seek $7,500 incentive awards for the two

27  named plaintiffs, totaling $15,000. (See Docket No. 83 at 8.)

28  Plaintiffs identify specific efforts undertaken by named

1  plaintiffs in this litigation, including pre-complaint meetings

2  with counsel, routine calls and ongoing discussions with counsel,

3  assistance with document collection and review, and preparation

4  of discovery materials.  (See id. at 37-39.)  Moreover, the named

5  plaintiffs undertook significant risk in bringing this litigation

6  at the potential cost of their reputations and coaching careers.

7  (See id.)

8       In light of plaintiffs' efforts and the risks incurred

9  in bringing this action, the court finds the requested incentive

10  awards to be reasonable and will approve the awards.

11  VI.  Conclusion

12       Based on the foregoing, the court will grant final

13  certification of the settlement class and will approve the

14  settlement set forth in the Settlement Agreement as fair,

15  reasonable, and adequate.  The Settlement Agreement shall be

16  binding upon all participating class members who did not exclude

17  themselves.

18       IT IS THEREFORE ORDERED that plaintiffs' unopposed

19  motion for final approval of the parties' class action settlement

20  (Docket No. 83) be, and the same hereby is, GRANTED.

21       IT IS FURTHER ORDERED THAT:

22       (1) Solely for the purpose of this settlement, and

23  pursuant to Federal Rule of Civil Procedure 23, the court hereby

24  certifies the following class: all persons who, pursuant to NCAA

25  Division I Bylaw 11.7.6, served as a "volunteer coach" in college

26  baseball at an NCAA Division I school from November 29, 2018 to

27  July 1, 2023;

28       (2) The court appoints Taylor Smart and Michael Hacker

20

1  as class representatives and finds that they meet the

2  requirements of Rule 23;

3          (3) The court appoints the law firm of Korein Tillery,

4  LLC as class counsel and finds that they meet the requirements of

5  Rule 23;

6          (4) The settlement agreement's plan for class notice

7  satisfies the requirements of due process and Rule 23.  The plan

8  is approved and adopted.  The notice to the class complies with

9  Rule 23(c)(2) and Rule 23(e) and is approved and adopted;

10          (5) The court finds that the parties and their counsel

11  took appropriate efforts to locate and inform all class members

12  of the settlement.  Given that no class member filed an objection

13  to the settlement, the court finds that no additional notice to

14  the class is necessary;

15          (6) As of the date of the entry of this order,

16  plaintiffs and all class members who have not timely opted out of

17  this settlement hereby do and shall be deemed to have fully,

18  finally, and forever released, settled, compromised,

19  relinquished, and discharged defendants of and from any and all

20  settled claims, pursuant to the release provisions stated in the

21  parties' settlement agreement;

22          (7) Plaintiffs' counsel is entitled to fees in the

23  amount of $14,775,000, and litigation costs in the amount of

24  $1,377,052.39;

25          (8)  Plaintiffs Taylor Smart and Michael Hacker are

26  entitled to incentive awards in the amount of $7,500;

27          (9) $32,917,797.61 shall be paid to participating class

28  members in accordance with the terms of the Settlement Agreement

1    (Docket No. 73-1.); and

2         (12) This action is dismissed with prejudice.  However,

3    without affecting the finality of this Order, the court shall

4    retain continuing jurisdiction over the interpretation,

5    implementation, and enforcement of the Settlement Agreement with

6    respect to all parties to this action and their counsel of

7    record.

8    Dated:  September 15, 2025

     WILLIAM B. SHUBB
9    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              22